[Crim. No. 568.   Department Two.—December 23, 1899.]

THE PEOPLE, Respondent, v. A. H. CAMPBELL, Appellant.

CRIMINAL LAW — LARCENY—FALSE PRETENSES — TITLE — POSSESSION — SPECIAL PROPERTY—FELONIOUS INTENT.—It is essential to the crime of larceny that the title to the stolen property shall not have been parted with. If the title has been obtained by fraud or deceit, the crime is that of obtaining goods under false pretenses, and not larceny; but if the transfer be of possession merely, or of some special property by way of pledge or bailment, which has been secured by fraud, with a present felonious intent to convert the property so acquired, the offense is larceny.

ID.—SUFFICIENCY OF EVIDENCE—FRAUDULENT PERSONATION — PARTIAL LOAN—PRETENDED BAILMENT AND SECURITY.—Where the evidence showed that the money of the prosecuting witness was fraudulently obtained through a false personation by the defendant of membership in a responsible house which was represented as about to employ the prosecuting witness as a collector, and as requiring a deposit from him by way of security; and the jury might infer from the evidence that part of the money was obtained by way of loan, and that as to the residue the title

remained in the prosecuting witness, and the defendant was a mere bailee thereof, charged with the duty of depositing the funds, and taking a certificate of deposit in the name of the prosecuting witness, and that defendant intended when he acquired possession to convert the money to his own use, the crime of larceny was established as to the residue so obtained, and a verdict of conviction of larceny by the jury must be sustained.

ID.—CONSTRUCTION OF CODE—SPECIAL PROSECUTION.—Where the evidence is sufficient to establish the crime of larceny, the defendant may be prosecuted generally therefor, and need not be specially prosecuted either for the results of false personation under section 530 of the Penal Code, or for obtaining property by false pretenses, under section 532 of the same code, although the facts might admit of a prosecution under either of those sections.

APPEAL from a judgment of the Superior Court of Los Angeles County and from orders denying a new trial and denying a motion in arrest of judgment. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

W. H. Shinn, and S. V. Landt, for Appellant.

Tirey L. Ford, Attorney General, and A. A. Moore, Jr., Deputy Attorney General, for Respondent.

HENSHAW, J.—Defendant was jointly charged with one Spencer with the crime of grand larceny, the information alleging merely that they "did willfully, unlawfully, and feloniously take, steal, and carry away" five hundred dollars, lawful money of the United States, the personal property of Fred Seagrave. The defendants obtained separate trials, and from the judgment which followed his conviction Campbell appeals. The facts disclosed upon the trial appear by the testimony of the complaining witness Seagrave, and are the following: Seagrave answered an advertisement in a Los Angeles paper, which read as follows: "Wanted, a young man of good habits to collect for a large firm. Must be able to drive, and give reference. State age and where last employed. Five hundred dollars security required. Cash or unencumbered real estate. Address M, Box 35, Times office." He was called upon by Spencer, who represented himself to be an employee of the Patton-Davies Lumber and Fuel

Company, a prominent business firm in Los Angeles, and was told that it was this firm which wished to employ a collector. He was taken by Spencer ostensibly to visit the office of the Patton-Davies Company. As they were about to enter the office Seagrave's companion said, "There is Mr. Davies now," and introduced him to the defendant Campbell, who personated Mr. Davies of the Patton-Davies Company. The result of the conversation was that the false Davies agreed to employ Seagrave as his collector. The next day they met and Seagrave accompanied Campbell in a ride about town, while the latter was attending, as he stated, to certain business matters. During the progress of the drive Campbell said: "Now, it will save time if you go round to the bank and draw the money," the money being the five hundred dollars called for in the advertisement, money which was to be held by the firm as security against possible embezzlements upon the part of their collector. Seagrave got the money. Campbell then said: "I have got a few bills I would like to settle, and it would save me so much time. . . . . Now, loan me the money to pay these debts in the Stimson block, and the balance I will put in and draw the balance out of the firm's money, and give you a certified check around at the First National Bank for five hundred dollars in your name." Elsewhere the witness Seagrave testifies as follows: "Q. Is it not true that you agreed with him that he was to use this money in his business, and he was to make a certificate of deposit for the full money which you delivered to him from his own funds? A. Yes, sir; I made an agreement; that is, it was agreed that he was to use the money just as you say, providing he returned the full amount on that same day. The agreement was that he could use the money and return it, yes, sir. Q. And there was no limit to the amount he was to use? A. No; there was no limit at all. Q. And you delivered to him the five hundred dollars under that agreement? A. Yes, sir; I gave him the money. Q. For their own use and their own business, as you have stated? A. Under that provision, yes, sir." Still further the witness testified: " 'Well,' he says, 'now, if you can get that in cash, it will save me the trouble of going around there, and I can pay a couple of bills, and when we come round there [to the bank] we can stick in the balance and draw out enough to make up the de-

ficiency, and put it in the bank in your name on the certificate of deposit.' Q. Did he say anything about what amount of bills he had to pay, or what they were? A. It was something like between twenty-five and fifty dollars, he said. Q. Why did you let him have five hundred dollars, if it was only twenty-five or fifty dollars that he had to pay? A. Now you ask me a question that I don't know myself, but I handed it to him; it was all rolled up together, and I simply handed it to him. Q. Did he not request you to deliver that money to him or let him have it to use to pay bills with, and then you were to go down to the First National Bank and get a certified check from the funds of the Davies Lumber Company? A. Yes, sir. Q. Yes, sir? A. Hold on now; let me answer your question there. I come to think of it, he demanded the five hundred dollars, and said about paying the bills and putting the balance, what he had left, in a certificate of deposit, and he would draw out enough of the company's funds to make up the balance of the deficiency. Q. Did he say how much you would have left, or anything about that? A. No, sir; he said that he had about twenty-five or fifty dollars to pay."

It is of the essence of the crime of larceny that the title to the property alleged to have been stolen shall not have been parted with. If one is induced by fraud or deceit to part with the title to personal property, the law recognizes such a crime as the obtaining of goods by false pretenses, and punishes it accordingly. But it is distinctly not larceny. Upon the other hand, where possession merely has been parted with, or where some special property in the goods, as by way of pledge or security, is transferred, if such special property and transfer be fraudulently secured with the present felonious intent to convert the property so acquired, the offense is recognized as larceny. (*People v. Raschke,* 73 Cal. 378; *People v. Johnson,* 91 Cal. 265.) As is said in *People v. Raschke, supra:* "The most difficult phases of the question arise where a defendant charged with larceny has by false and fraudulent pretenses obtained possession of the property under the guise of a purchase and sale. It is clear that in such a case, where there has been a change both of the legal possession and the entire property of the owner in the thing delivered, there can be no larceny; otherwise where there

has been a change of possession, but no change of property." From the quotations which we have given from the testimony of Seagrave it is apparent that the jury could have found that of the five hundred dollars transferred to defendant not more than fifty dollars was a loan. As to the rest, the title remained in Seagrave, and the defendant was a mere bailee charged with the duty of depositing the funds and taking therefor a certificate of deposit in the name of Seagrave. It is this view of the evidence which the jury must have adopted, and, as no one will question but that there was sufficient shown to warrant a finding that it was the defendant's present intent at the time he acquired possession to convert the money to his own use, the crime of larceny was established. In this view the case is very similar to that of *People v. Tomlinson*, 102 Cal. 19.

But appellant objects that the offense proved by the evidence is exactly covered by sections 530 and 532 of the Penal Code, and that he should have been charged under one or another of these sections. There are offenses under these sections which are not larceny, and the mere fact that under the peculiar circumstances of this case the crime, while shown to be larceny, might have been punished under another provision of the Penal Code, did not make it obligatory upon the prosecution to charge under the one provision rather than the other. As is said in *People v. Frigerio*, 107 Cal. 152: "The fact that the circumstances disclosed are such that the defendant might have been charged with and convicted of larceny does not make the offense any less one of the special classes provided for in section 532 of the Penal Code, the circumstances being sufficient to bring the case within that section. Nor does it render defendant less amenable to a prosecution under the latter section."

The judgment appealed from is affirmed.

McFarland, J., and Temple, J., concurred.