HINDMAN v. STATE.

Opinion delivered June 11, 1904.

1. LARCENY—FRAUDULENT BET—PARTING WITH POSSESSION.—Where several persons conspire to cheat a man under color of a bet, and he simply deposits his money or property with one of them, not meaning thereby

to part with the ownership therein, they by taking the money or property none the less commit larceny, though afterwards they are by fraud made to appear to win. (Page 522.)

2.  SAME—PARTING WITH POSSESSION AND TITLE.—Where several persons conspire to cheat a man under color of a bet, and he deposits his money or property with one of them, meaning thereby to part with the ownership therein, they by taking such money or property do not commit larceny, though they may be guilty of false pretenses. (Page 523.)

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

Reversed.

### STATEMENT BY THE COURT.

Appellant was indicted by the grand jury of Garland county, at the May term, 1903, of the circuit court of said county, for the crime of grand larceny, and was convicted of said crime upon trial in said court on the 10th day of June, 1903. Judgment and sentence was pronounced against him in said court on the 20th day of July, 1903, and he has duly presented an appeal to this court.

The indictment charged the crime of larceny against appellant in apt words, and the property charged to have been stolen consisted of two diamonds, alleged to be worth $400 each, and $25 in lawful United States money as the personal property of one Valentine Haffner.

The evidence in this case is, in substance, that one Valentine Haffner was induced to bet his diamond rings, of the value of about $800, and $25 in money, upon a foot race, and lost. Said foot race was got up and managed by the notorious "foot racers" at Hot Springs, Garland county, Arkansas. The foot racers consisted of a company of men, who, it seems from the evidence, were in a conspiracy to induce men by trick and false and fraudulent representations to bet money or valuable property upon foot races managed and controlled by them in such a way that there was no chance to lose, according to their representations, but in reality there was no chance to win. It appeared that the appellant, Hindman, was one of these conspirators, and

was the runner for the company of foot racers. They made representations to the effect that they represented a company of millionaires, who had much money to bet, and that they had found a man, one Williams, who could beat Hindman—in fact, could beat any man in the world in a foot race, and he was the man on whom appellant was induced to bet. The scheme was that Williams was to fall down in the race, and thus allow his antagonist, Hindman, to win the race. This was prearranged and understood, so that, while the appellant was assured of winning, there really was no chance whatever for him to win, but a certainty of his losing. With this assurance and belief on the part of appellant, he made his bet, and, according to prearrangement, the man Williams fell in the race, and Hindman beat, and won the money, of which there was a large amount at stake on the race. Haffner in his evidence said: "I put my diamonds and money up, expecting that, if I lost, the person with whom I bet would get them." After the race was run, Haffner voluntarily gave up the diamonds and money he had bet; acknowledged he was beaten. This was a consent to the passing of the title to the property, and it seems that he bet with that view.

Over the objection of appellant, the court gave to the jury instructions 3, 6 and 7, to which the appellant excepted, and made the giving of them a ground of his motion for new trial. Said instructions are as follows:

"3. In this case, if you believe from the evidence, beyond a reasonable doubt, that the defendant was a member of a conspiracy having for its object and purpose the inducing of whosoever they could to wager their money or property on sham foot races; and if you further believe that the witness, Valentine Haffner, was induced or persuaded by the defendant or other members of the conspiracy to bet his money on such race, and that he deposited them with Scott, a member of such conspiracy, as stake holder, to abide the issue of a race understood by Haffner to be honestly run or one fixed in his interest, and that Scott received them, not as a *bona fide* bet, but with intent that Haffner should lose them on a fraudulent game concerted between himself, the defendant and others, and they were so lost, with intent to fraudulently convert to their own use—this was larceny, and you should convict.

"6. If you believe from the evidence, beyond a reasonable doubt, that a conspiracy or confederation existed between the defendant and others for the purpose of inducing people to wager their money on foot races, the result of such races being within the control of such conspirators, and that such races were so devised and planned that those betting thereon, who were not members of the conspiracy, would inevitably lose, money thus obtained would be by larceny; and if Haffner was induced to wager his property on such a race and lose it, and the defendant participated therein, you should convict.

"7. If you find from the evidence, beyond a reasonable doubt, that it was not the intention of Haffner, when he deposited his property with the stakeholder, Scott, to part with the ownership therein, but merely to part with the possession for the purpose of having it returned to him after a sham race, or that he delivered it to the stakeholder for the purpose of having it delivered to a *bona fide* winner; and if you further find that Scott was a member of a conspiracy to induce parties to bet on sham foot races, when the bettor had no chance whatever to win, and that he received Haffner's property with no intention of returning it, or of delivering it to a *bona fide* winner, but for the purpose of feloniously converting it to his own use, or the use of the members of the conspiracy, and to deprive Haffner permanently of his property; and you further find, beyond a reasonable doubt, that the defendant was a member of such conspiracy, and was present aiding and abetting in the taking of money under such circumstances, he would be guilty of larceny."

The following instructions were asked by appellant, and refused by the court:

"4. You are further instructed that to constitute larceny there must be a wrongful taking of the property from another, and if you find from the evidence in this case that the witness Haffner parted with his property, meaning to relinquish his possession and property interest in such diamonds and money charged in the indictment, then the state has failed to make out a case of grand larceny, and this would be true, although you may further find from the evidence that the witness, Haffner, was induced to part with said property and the possession thereof by fraud and misrepresentation on the part of the defendant.

"5. You are instructed that it is not every unlawful taking of the personal property of another with or without his knowledge or consent that amounts to larceny; so in this case you cannot convict the defendant for larceny, as charged in the indictment, unless you first find from the evidence, and that beyond a reasonable doubt, that the prosecuting witness, Haffner, did not, when he bet the articles of personal property mentioned in the indictment and parted with their possession, consent to part with the control, ownership and possession thereof, although you may find that the parting with the control, ownership and possession thereof was obtained by fraud.

"6. If you find from the evidence that the prosecuting witness, Haffner, voluntarily bet the articles charged in the indictment on the foot race, meaning to receive the stake if he won, and lose his property if he lost, then the defendant is not guilty of larceny, although the race was fraudulently run.

"7. If the prosecuting witness, Haffner, consented to part with the possession and title of his property, then the defendant cannot be found guilty of larceny, no matter how fraudulently said property may have been obtained from him.

"9. One of the questions for you to determine in this case is, was the property of the prosecuting witness, Haffner, obtained by the defendant by the consent of said Haffner; if it was so obtained, however fraudulently, then the defendant is not guilty of larceny as charged in this indictment.

"10. If you should find from the evidence that there was a conspiracy existing between the defendant and others to obtain the property of Haffner by trick, but that the property charged in the indictment was bet by him with one of the conspirators, that he bet the articles and delivered them to the stakeholder, meaning to receive the stake if he won or lose his property if he lost, then you cannot convict the defendant of any crime under this indictment.

"11. To constitute the crime of larceny, there must be a trespass; that is, the property must be taken without the consent of the owner, coupled with the intent to steal the property so taken. The crime of larceny cannot therefore be committed when the property is taken with the consent of the owner, however guilty may be the taker's purpose and intent.

"12. If you find from the evidence that Haffner bet the money and diamonds charged in the indictment upon a foot race, and delivered the same to a stakeholder, with the intent and purpose that said money and diamonds were to be delivered to the winner of said race as the absolute property of said winner; then, if you find from the evidence that such race was run, and the runner upon whom Haffner bet was beaten, and the result was announced that Haffner had lost; then, if you find that Haffner acquiesced in the announced result, and made no objection to the delivery of the diamonds and money to the winners, intending thereby to part with the title of his property, then you will find the defendant was not guilty as charged."

To the refusal to give these instructions and others of like import the appellant excepted, and makes the refusal ground for his motion for new trial. The appellant was found guilty of larceny, filed a motion for new trial, which was overruled, and he excepted, and brings the case here by appeal.

*Wood & Henderson,* for appellant.

The court's instructions that larceny is committed where property with the owner's consent is feloniously obtained from the owner by means of fraudulent acts, representations and practices, was error. 2 Bish. Cr. L. § § 758, 811; 3 Greenleaf, Ev. § 150; 18 Am. & Eng. Enc. Law, 459; Russell, Cr. 200; 45 N. Y. 392; 17 Ill. 399; 2 Phil. 385; 94 N. Y. 90; 23 N. Y. 61; 53 N. Y. 11; 13 Atl. 422; 25 L. R. A. 346; 43 Pac. 2; 59 Pac. 593; 59 Pac. 594; 36 Pac. 506; 41 S. E. 429; 22 So. 378; 49 Ark. 147. The court erred in permitting improper evidence to go before the jury as to statements made by other persons in the absence of appellant. Underhill, Cr. Ev. 550, 548; 20 Ark. 225; 32 Ark. 220; 45 Ark. 132; 59 Ark. 422; 62 Ark. 516; 50 Ark. 287. It was error to admit evidence as to other transactions and crimes participated in by appellant. Underhill, Cr. Ev. 107; 39 Ark. 278, 626; 2 Ark. 242; 4 Ark. 59; 61 N. E. 293.

*G. W. Murphy, Attorney General,* and *W. H. Martin, Prosecuting Attorney,* for appellee.

If one be inveigled by a conspiracy into betting on a game or trick at which he has no chance of winning, the taking of

the stake by the conspirators is larceny. 48 Am. Rep. 754; 78 Ky. 15; 57 Mich. 403; 89 N. Y. 638; 13 Lea, 701; 6 Baxt. 522; 67 N. Y. 322; 2 Russ. Crimes, ·29; 110 Cal. 598; 17 Ill. 339; 43 Ill. 397; 158 Ill. 660; 51 W. Va. 220; 7 Am. & Eng. Enc. Law (2d Ed.), 482; 169 N. Y. 418; 88 Am. St. Rep. 546; 49 Ark. 149. There was no error in the admissibility of evidence. 11 A. & E. Enc. 513, 514.

HUGHES, J. (after stating the facts). The judgment in this case must be reversed for error in the instructions given in this case and the refusal of those asked by the appellant.

It is often difficult to make the distinction between larceny and obtaining money under false pretenses. Bishop, in his work on Criminal Law (Vol. 2, § 758, 8th Edition), says: "Larceny is the taking and removing by trespass of personal property, which the trespasser knows to belong either generally or specially to another, with the felonious intent to deprive him of his ownership therein." 3 Greenleaf, Ev. § 150, gives this definition of larceny: "The wrongful or fraudulent taking and carrying away of the mere personal goods of another, with a felonious intent to convert them to his (the taker's) own use, and make them his own property, without the consent of the owner." "The owner's consent to the taking prevents larceny." 2 Bishop, Cr. Law, 811, 8th Edition. "There can be no trespass where there is a consent to the taking." *Ib.*

At subdivision 3, section 811, Bishop says: "Assuming the consent to be equally broad with the taking, and to comprehend the ownership in the thing together with its possession, we have just seen that by the theory of this branch of the law, contrary to just principle, it will protect the thief, though he obtained from the owner by fraud; in other words, by reason of the consent, even when procured by fraud, there is still no trespass, therefore no larceny."

Mr. Greenleaf, volume 3, section 160, says: "A felonious intent may also be proved by evidence that the goods were obtained from the owner by stratagem, artifice or fraud. But here an important distinction is to be observed, between the crime of larceny and that of obtaining goods by false pretenses. For supposing that the fraudulent means used by the prisoner to obtain possession of the goods were the same in two separate

cases, but in the one case the owner intended to part with his property absolutely, and to convey it to the prisoner, but in the other he intended to part with the temporary possession for a limited and specific purpose, retaining the ownership in himself; the latter case alone would amount to larceny, the former constituting only the offense of obtaining goods by false pretenses." So says Russell on Crimes (6th Ed.), 200.

There are a great many decisions to the same purport. See *Welsh* v. *People,* 17 Ill. 399; *McDonald* v. *People,* 23 N. Y. 61; *Smith* v. *People,* 53 N. Y. 11; *Commonwealth* v. *Eichelberger,* 13 Atl. 422; 4 Am. St. Rep. 642; *Connor* v. *People (Colo.),* 25 L. R. A. 346; *People* v. *Shaughnessy,* 42 Pac. 2; *People* v. *Campbell,* 59 Pac. 593.

Where persons conspire to cheat a man under color of a bet, and he simply deposits his money as a stake with one of them, not meaning thereby to part with the ownership therein, they, by taking the money, commit larceny, and not the less so though afterwards they are by fraud made to appear to win. 2 Bishop, Cr. Law, § 813, subdivision 3.

The third, sixth and seventh instructions given at the request of the state are clearly not the law. They declare the law to be that, if money or property is obtained by means of a fraudulent game contrived for the purpose of defrauding another out of his property by fraudulent representations and acts, the person obtaining property under such circumstances is guilty of larceny. They leave out of view entirely the purpose and intention of the owner in parting with his property. Under these instructions the prosecuting witness may have surrendered his property with the purpose and understanding that he was passing the absolute title as well as the possession, and the defendant would have been guilty of larceny if the property was obtained by means of a fraudulent game.

It is evident that the court should have given some of the instructions asked by the appellant and refused by the court. The testimony in this case shows that Haffner consented to the taking by the appellant of the diamonds and money lost by him on the foot race, and his consent, though fraudulently obtained, prevented larceny, though it may have been fraudulent and false pretenses.

Reversed, and remanded for a new trial.