[Crim. No. 677.  Second Appellate District, Division Two.—October 20, 1919.]

## THE PEOPLE, Respondent, v. EDWARD SHWARTZ, Appellant.

[1] CRIMINAL LAW—DISTINCTION BETWEEN LARCENY AND FALSE PRETENSES.—The distinction between larceny and false pretenses is that in larceny the owner of a thing has no intention to part with his property therein to the person taking it, although he may intend to part with possession, while in false pretenses the owner does intend to part with his property in the money or chattel, but it is obtained from him by fraud.

[2] ID.—OBTAINING MONEY BY FALSE REPRESENTATION—INTENTION OF PERSON PARTY PAYING—NATURE OF OFFENSE.—Where in a pros-

---

1. Distinction between larceny and obtaining money by false pretenses, note, 2 Ann. Cas. 1010.

ecution for the crime of grand larceny it is shown by the evidence that the money which the defendant is charged with having unlawfully and feloniously converted to his own use was delivered to him by the complaining witnesses upon the false representation that he had influence with the police commission and that he could obtain for them with the money a license to conduct a certain business, it being also shown that it was not the intention when the money was delivered that it should become the property of the defendant, but was to be paid by him to some unknown and supposed to be actually existing person, but who as a matter of fact was a spurious and mythical individual, the offense is grand larceny and not obtaining money by false pretenses.

[3] ID.—DISTINCTION BETWEEN LARCENY AND FALSE PRETENSES—INSTRUCTION PROPER.—Where possession of money is obtained by fraud, trick, or device, the question whether the crime, if any there be, is larceny or false pretenses often depends upon a nice analysis of facts and legal principles; therefore, in such a case, it is allowable to give an instruction pointing out the distinction between these two classes of crime in order that, if the jurors believe the money was obtained by fraud or trickery, they may acquit the defendant of the charge of larceny if they also believe that the complaining witness intended parting with the title to defendant.

[4] ID.—INDICTMENT CHARGING SEVERAL COUNTS—FORM OF VERDICT AND JUDGMENT.—A separate verdict on each of the ten counts upon which a defendant is convicted constitutes a sufficient compliance with section 954 of the Penal Code, as amended in 1915, whereby it is provided that every "offense upon which the defendant is convicted must be stated in the verdict"; and there is no impropriety in the court pronouncing, and the clerk entering, a separate judgment upon each of the ten verdicts—each judgment being in the form of an indeterminate sentence as provided by the indeterminate sentence law.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Frank R. Willis, Judge. Affirmed, except as to the one count.

The facts are stated in the opinion of the court.

Warren L. Williams for Appellant.

U. S. Webb, Attorney-General, Joseph L. Lewinsohn and Arthur Keetch, Deputies Attorney-General, and Jerry H. Powell for Respondent.

FINLAYSON, P. J.—Defendant, who was convicted of the crime of grand larceny, appeals from the judgment and from an order denying a new trial.

The grand jury of Los Angeles County returned an indictment against defendant containing twenty-eight counts. In fourteen counts defendant is charged with the crime of grand larceny; in the remaining counts he is charged with the crime of obtaining money by false representations and pretenses. Before the submission of the cause to the jury the court, for insufficiency of the evidence, withdrew from the jury's consideration all the counts wherein defendant is charged with the crime of obtaining money by false representations and pretenses, and, for the same reason, withdrew from the jury's consideration four of the counts wherein larceny is charged. Defendant was convicted of grand larceny, as charged in each of the remaining ten counts.

In each of the counts upon which defendant was convicted it is charged that he willfully, unlawfully, and feloniously took, stole, and carried away a certain sum of money, the amount being specifically stated in each instance. There was a number of complaining witnesses. The theory of the prosecution was that each complaining witness was engaged in the business of conducting a bath and massage parlor in the city of Los Angeles, for the conduct of which a license from the city's police commission is required by law—a license that must be renewed every six months; that prior to obtaining each license or its renewal, defendant visited each complaining witness and falsely represented to her that he had influence with the police commission, and, for a certain designated sum of money, he could and would obtain the desired license or its renewal; and that, in each instance, the complaining witness, believing such false representation, delivered the stipulated sum of money to defendant, who thereupon unlawfully and feloniously converted it to his own use. In short, the theory of the prosecution was that defendant was guilty of grand larceny in that he obtained possession of the sums of money by fraud and trickery.

It is claimed by appellant that if the evidence shows him to be guilty of any crime, it is that of obtaining money by false pretenses, and not grand larceny—the crime of which

he was convicted. In support of this claim it is contended
that the evidence shows indubitably that each of the com-
plaining witnesses intended to part with the title to her
money as well as its possession. [1] The distinction be-
tween larceny and false pretenses is substantially this: In
larceny the owner of a thing has no intention to part with
his property therein to the person taking it, although he
may intend to part with possession. In false pretenses the
owner does intend to part with his property in the money
or chattel, but it is obtained from him by fraud. (*People* v.
*Delbos,* 146 Cal. 734, [81 Pac. 131].) [2] There would
be merit in appellant's contention if, when the complaining
witnesses delivered the several sums to him, they had in-
tended that the moneys should then and there become his
property. So far from such being the case, it appears from
the evidence that each complaining witness, at the time
when she delivered her money to appellant, intended that it
should be received by him for the purpose of carrying it
and paying it to some person, unknown to the witness,
whom, however, she supposed to be an actually existing per-
son, but who, as a matter of fact, was a spurious and
mythical individual, invented by appellant for the fraudu-
lent purpose of tricking the witness into parting with the
possession of her money. Thus, in support of the first count,
Marie Savage—from whom appellant was charged in count
one with taking, stealing, and carrying away $130—testi-
fied as follows: "I told him I would like to get a place,
and he asked me if I had any money, and I told him
yes, I had, and he asked me how much, and I told him
I thought I had enough—that I understood it would be
one hundred dollars to get the license; and I gave him
one hundred dollars to get me a license. . . . He told me
that he could fix it all right. . . . He told me I was to
give him one hundred dollars, and after I got the license
I was to give him $25. . . . He told me he could not get
it unless I did give him the money. Q. Well, was it to
fix somebody? A. Understood to be. . . . Q. Did he say at
any time that he would use that money for the police com-
mission to get you a permit? A. Yes, sir. . . . Q. That
money, as far as you were concerned, was for the intention
or purpose, of corruptly bribing a public official, was it?
A. Well, I suppose so. . . . Q. You understood this money,

did you not, was to be given to some public official? A. Yes, but I didn't know who.'' Had the money been used by defendant, as Marie Savage supposed it would, when she delivered it to him for the purpose of being paid to an unidentified but supposedly existing corrupt public official, it would have remained her property until its final delivery to that person. She did not intend to part with the title to the money until it should be delivered to the public officer whom she supposed defendant had or would corruptly influence to issue or procure the issuance of the license. Defendant, as the complaining witness understood the transaction, was her agent to carry her money to the supposedly perfidious official. The title thus remaining in Marie Savage, it was subject to larceny as her property, and the fraudulent appropriation of it by the defendant to his own use, he having had the intention from the beginning to obtain possession of it for that purpose, constituted, in law, the crime of larceny. (*People* v. *Delbos, supra.*)

With one exception, presently to be noticed, what has just been said with respect to count one applies with equal force to each of the other counts upon which defendant was convicted. The evidence, in every instance where money was paid to defendant, justified the inference that, with the exception of certain smaller sums agreed to be paid to him as a reward for his nefarious services in his assumed character as a corrupter of men, defendant received the sums delivered to him for the purpose of carrying and delivering them to some supposedly corrupt public official, who, as the evidence shows, did not exist.

[3] It is further contended by appellant that the court erred in that it gave an instruction which, according to appellant, misled the jury to his prejudice. It seems that, notwithstanding it had dismissed every count that charged defendant with obtaining money by fraudulent representations and pretenses, the court, nevertheless, gave an instruction wherein it pointed out the distinction between larceny and the crime of obtaining money by false pretenses. Appellant, conceding that the instruction itself embodies a correct statement of the law, argues that it prejudiced his case in that it was an invitation to the jurors to convict him of the crime of larceny if they believed him guilty of obtaining the moneys by false pretenses. We fail to see

any force in the objection. Where, as here, possession of money is obtained by fraud, trick, or device, the question whether the crime, if any there be, was larceny or false pretenses often depends upon a nice analysis of facts and legal principles. For this reason it is allowable, in such a case, to give an instruction pointing out the distinction between these two classes of crime, in order that, if the jurors believe the money was obtained by fraud or trickery, they may acquit the defendant of the charge of larceny if they also believe that the complaining witness intended parting with the title to defendant. It was proper, therefore, for the court to explain to the jury what constitutes larceny by trick or device, and the difference between such larceny and the crime of obtaining money by false and fraudulent pretenses. It is, indeed, the duty of the court "in charging the jury . . . to state to them all matters of law necessary for their information." (Pen. Code, sec. 1127.)

The thirteenth count—one of the counts upon which appellant was convicted—charges that defendant, on or about November 1, 1917, feloniously took, stole, and carried away $150, the personal property of one Lyllian Hoffman. It is contended, and, as we think, correctly, that the verdict of conviction on this count is contrary to the evidence. The thirteenth count was based upon an alleged payment of $150 to defendant by Lyllian Hoffman to secure the renewal of her license on November 1, 1917. On direct examination, when asked if she had paid defendant any money to get this renewal, the Hoffman woman replied: *"If I did I gave him $150 when I got it [the renewal license] for myself."* On cross-examination, in reply to a question asking her if she gave defendant any money for the renewal, she said: "I do not know whether it was in November then or—no; *I did not pay for that; no sir."* This evidence directly negatives any claim that defendant ever received any part of the $150 which, in the thirteenth count, he is charged with having stolen. Our attention has not been called to any other evidence tending to show that defendant was ever paid any money to procure this particular renewal of Lyllian Hoffman's license, and our own independent search of the record has failed to disclose any evidence to

support defendant's conviction upon this count of the indictment.

[4] The jury brought in a separate verdict on each of the ten counts upon which defendant was convicted. This was doubtless a sufficient compliance with section 954 of the Penal Code, as amended in 1915 [Stats. 1915, p. 744], whereby it is provided that every "offense upon which the defendant is convicted must be stated in the verdict." Upon each of the ten verdicts of conviction the court, at the time appointed for sentence, pronounced, and the clerk entered, a separate judgment—each judgment being in the form of an indeterminate sentence as provided by the indeterminate sentence law. (Pen. Code, sec. 1168, as amended March 18, 1917, [Stats. 1917, p. 665].) Appellant makes no objection to the form of the judgment, nor to the fact that, in form, there was a separate judgment upon each of the ten verdicts of conviction; and, under the circumstances, we see no impropriety in the procedure thus adopted by the trial court. As we have said, appellant makes no point respecting the form of the judgment, or that, in form, it appears to consist of ten separate judgments, each based upon a separate verdict of conviction, and we advert to the matter solely because of the form that our judgment must take, owing to the situation presented to us by the record here.

A careful examination of the entire record convinces us that, with the single exception that the evidence fails to support the verdict of conviction of the crime charged against him in the thirteenth count, defendant had a fair and impartial trial, free from any prejudicial error.

The judgment wherein it is recited that defendant was found guilty of the crime of grand larceny as charged in count thirteen of the indictment and adjudging that he be punished for the crime so charged in said count by imprisonment for an indeterminate period, and likewise so much of the order denying defendant's motion for a new trial as denies him a new trial of the issues presented by the thirteenth count, are reversed. In all other respects the judgment or judgments and the order or orders appealed from are affirmed.

Sloane, J., and Thomas, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 18, 1919.

All the Justices concurred, except Melvin, J., who was absent.