[Crim. No. 610.   Fourth Dist.   July 18, 1941.]

THE PEOPLE, Respondent, v. CARL SELK, Appellant.

Bernard Brennan for Appellant.

Earl Warren, Attorney General, Gilbert F. Nelson, Deputy Attorney General, Earl Redwine, District Attorney, and John Neblett, Deputy District Attorney, for Respondent.

GRIFFIN, J.—Appeal from a judgment of conviction and order denying a new trial. Appellant was charged in an information filed November 28, 1940, with three counts of grand theft, under sec. 484, Penal Code. Count one charged larceny in the sum of $321.95; count two, obtaining a sum in excess of $200 by false pretense; and count three, with procuring complainants to report falsely of their wealth and thereby obtaining fraudulent possession of $280. After a plea of not guilty, appellant was tried by a jury and verdicts of guilty were returned on each of the three counts in the information. Motion for a new trial was denied. Appellant was sentenced to the state prison on counts two and three to run concurrently with the sentence on count one.

The appellant, whose true name is Carl Selk, called at the farmhouse of the complaining witnesses, Mr. and Mrs. Knittle, near Perris in Riverside County. During this visit appellant used the name of Bowers. The Knittles had a Delco light plant equipment which they wanted replaced. Appellant showed them circular illustrations of a 1000-watt Onan Generating Plant, a set of batteries consisting of sixteen cells, and a battery watchman. The Knittles thereupon ordered the Onan equipment from appellant. In connection with the order of the equipment, dated August 21, 1940, the Knittles signed, at that time, the order, which was marked "Rush,"

a blank modernization note and a credit statement application. Mr. Knittle testified that he did not knowingly sign a Borrower's Completion Certificate on that occasion. On the following day appellant went to the San Bernardino branch of the Bank of America, where the Knittles had previously established credit. In dealing with the bank, appellant gave his correct name, Mr. Selk. Appellant presented the order, note and credit statement application to the bank for purchase. The reverse side of the note carried this endorsement, reading in part, " . . . that the work and/or materials to be done or supplied have been delivered and/or installed satisfactorily . . . "

The bank approved the purchase of the note and caused a cashier's check to be drawn in the sum of $280, payable to the Lighting Plant Sales, the firm name in which appellant did business. The cashier's check was then given to appellant by the bank, when it was discovered that the note was post dated. Upon discovery of the error in this first note, the appellant was called back into the bank from his car, and a new note was prepared and given to him, together with a Borrower's Completion Certificate. The banker did not know whether a Borrower's Completion Certificate was presented on the first occasion, but testified that it was a necessary prerequisite in order that such a loan be insured by the government under the N. H. A., and that the instant transaction was handled as such. The cashier's check was paid on August 26, 1940. The banker allowed appellant to secure the signature of the Knittles to the new note and other documents, which were returned to the bank on August 28, 1940. The following day, after the discovery of the error in the date on the first note, the appellant took the new note and the Borrower's Completion Certificate out to the Knittles. Appellant told Mr. Knittle that the bank had made a mistake in copying the note and that the month of July had been put in instead of the month of August, and that he had been requested to have a new note signed. Appellant and the Knittles then went into a drugstore in Perris, and Mr. Knittle sat on one side of appellant and Mrs. Knittle on the other. Appellant then took a leather folder from his pocket, with the papers protruding from it, and asked Mr. Knittle to sign the papers. There was a blank paper covering the modernization note entirely. Underneath the blank paper was the modernization

note and underneath this note was the Borrower's Completion Certificate. After signing the note, Mr. Knittle lifted up the paper, and appellant stated, "That one too," whereupon Mr. Knittle signed the bottom paper, which turned out to be a Borrower's Completion Certificate. At about the time Mrs. Knittle was putting her signature on the papers appellant threw a Jefferson nickel down and stated that it would bring her luck or a lot of money, or words to that effect. The Borrower's Completion Certificate read as follows:

"NOTICE TO BORROWER — DO NOT SIGN THIS CERTIFICATE UNTIL THE WORK IS SATISFACTORILY COMPLETED.

"Dated at San Bernardino

........196.. Aug. 22.. '40........, 19..

"I (we) the undersigned hereby certify that all articles and materials have been furnished and installed and the work satisfactorily completed on premises at 6 miles W. of Perris, Gavilan Hills in accordance with my application for a loan dated August 24th, 1940, pursuant to the provisions of Title I of the National Housing Act, as amended.

"Albert S. Knittle
"Carmela M. Knittle."

On that date none of the equipment had been delivered, installed or put in operation. Mr. Knittle or Mrs. Knittle at no time knowingly signed a Borrower's Completion Certificate. Appellant told the Knittles he would bring the batteries the first of the week and that they would get the generating plant in about three weeks or less. On September 4, 1940, a set of batteries was delivered to the Knittles' home. These batteries were not the ones described on the order blank, nor were they the ones described in the circular shown to the Knittles. No equipment other than the batteries was ever delivered to or received by the Knittles in connection with this transaction. On August 28, appellant sent a letter to the Knittles telling them that he would deliver the batteries to them, and he signed it "Mr. Bowers."

In addition to the transaction with the Knittles, the prosecution proved similar transactions of appellant with several others in which the Borrower's Completion Certificate was fraudulently obtained or forged, and who never received their equipment either. An officer of the C. I. T. Corporation testified that in buying commercial paper of this character a

completion certificate was necessary to show that all improvements had been installed before that corporation would purchase the paper as a discount transaction. Appellant, who had been previously convicted of a felony, took the stand and offered no testimony to refute the evidence of the false signatures nor the evidence regarding the obtaining of the Borrower's Completion Certificate. He admitted that he secured the signature of the Knittles on the Borrower's Completion Certificate on August 23, 1940. Appellant produced numerous items of correspondence to show that there was a delay in the delivery of the 1000-watt generating plant by the Kato Engineering Company. In one of the letters to the Kato Engineering Company, the appellant refers to a $1000 damage suit that had been filed by one of his customers. Appellant admitted that no such damage suit had been filed against him, but that he just wanted to "high pressure" the company. On rebuttal, the prosecution introduced a letter sent to the Bank of America, San Bernardino branch, by appellant, which reads as follows:

"Dear Sir:

"Your letter of September 24th has been received by us with reference to Mr. Knittle and the equipment he purchased.

"Mr. Bowers who sold this unit has installed the batteries and was expecting special equipment to be installed on the generator which was not in stock at the time, but the equipment is all ready to be installed only that Mr. Bowers was called up to the Army Ammunition Reservation near Hawthorne, Nevada in regard to some emergency work, and he is expected back within the next day or so, and will then complete the installation.

"Thank you for calling this to my attention, as I did not know that the job was not completed, or I would have taken care of it myself.

"Very truly yours,
"Carl Selk,
"Lighting Plant Sales."

When cross-examined with respect to this letter, appellant admitted that when he wrote the letter to the bank, he knew that the equipment had not been installed in the Knittle home and that the information conveyed to the bank by the letter was false.

Appellant first argues as to count one that the evidence is legally insufficient to support the verdict and judgment; that there is nothing in the record to show any misrepresentation or fraudulent intent on the part of the appellant in the making of the sale of light plant equipment; that the transaction was civil in nature and handled in the ordinary course of business; that the bank was not defrauded because the credit was obviously upon the note and the credit information furnished upon the application and upon the credit standing of the Knittles at the bank, rather than upon the Borrower's Completion Certificate; that after the purchase of the note any representations made in securing the substitute note or Completion Certificate or additional security or papers would not date back and make a criminal act. The same argument is made in response to counts two and three.

■ Section 484, Penal Code, provides that every person who shall feloniously take the property of another *or* shall, by any false or fraudulent representation or pretense, defraud any person of money or personal property, *or* who causes or procures others to report falsely of his wealth whereby he obtains credit and thereby obtains possession of the property of another, is guilty of theft. It will be noted that the act reads in the disjunctive and any one of the acts denounced constitutes the crime of theft. The offense of theft has been substituted for the former separate offenses of larceny, embezzlement and obtaining money or property by false pretenses. (Penal Code, sec. 490a; *People* v. *Carter*, 131 Cal. App. 177 [21 Pac. (2d) 129].)

■ It is apparent from the evidence that there was but one transaction and but one unlawful taking, if any, involved in the charge. There was but one offense of grand theft under any construction of the evidence, i. e., either obtaining the money or property by false pretenses, by larceny or obtaining it by falsely reporting another's wealth. Three separate and distinct crimes, therefore, were not committed under the evidence. (*Ex Parte McCarthy*, 72 Cal. 384 [14 Pac. 96] ; *People* v. *Werner*, 29 Cal. App. (2d) 126 [84 Pac. (2d) 168] ; *People* v. *Johnson*, 22 Cal. App. 362 [134 Pac. 339] ; *People* v. *Lawlor*, 21 Cal. App. 63 [131 Pac. 63].)

■ Appellant raises this point only by contending that the evidence is not sufficient to support his conviction on each count. The credit statement referred to in count three, given by the Knittles, set forth in detail their age, intended use of

proceeds of loan, description of their real estate and obligations outstanding and similar statements. There is no evidence that any of these statements are or were false or reported falsely. The conviction, therefore, on the charge of grand theft set forth in count three, in this respect is lacking in evidentiary support. The conviction, therefore, must stand upon the theory that appellant otherwise obtained the money or property by false pretenses or by larceny. The unlawful taking of the same property cannot be said to have been accomplished by both methods so as to constitute two separate offenses; in other words, it must have been by one method or the other, but not by both. Conviction on both count one and two, therefore, cannot be sustained. At least one must fall.

■  The question then remains, from the evidence, have the essential elements of the former offense of larceny *or* the former offense of obtaining money or property by false pretenses been established? Although the offense of theft has been substituted for the two former offenses mentioned, no elements of the former crimes have been changed. (*People* v. *Myers,* 206 Cal. 480 [275 Pac. 219].) The necessary and essential elements of each have been clearly established and distinguished. (*People* v. *Delbos,* 146 Cal. 734 [81 Pac. 131]; 12 Cal. Jur. 451, sec. 3; 12 Cal. Jur. 460, sec. 13.) Where possession of money is obtained by fraud, trick or device, a question whether the crime, if any there be, is larceny or false pretenses often depends upon a nice analysis of facts and legal principles. (*People* v. *Shwartz,* 43 Cal. App. 696 [185 Pac. 686].)

■  *Commonwealth* v. *Tidwell,* 162 Ky. 114 [172 S. W. 102], involved a promise to deliver goods in the future. That court approved the rule that, a false promise to do something resting upon an event to happen in the future is not within the statute denouncing false pretenses, but stated that a promise of future performance, when coupled with a false statement as to a past or existing fact which induces another to rely upon the false promise will, in connection with the representation as to the existing fact, constitute a false pretense so that a conviction may be had thereon. In the instant case, our attention has not been called to any particular false representation made by appellant of a past or existing fact prior to the delivery of the note. The evidence completely establishes the elements of the former crime of larceny, by

trick and device, now included in sec. 484 of the Penal Code. This is the former offense of larceny by trick and device, which was a form of larceny, now a part of grand theft, and comes within the first count of the information.

It is clear from the evidence that the transaction should be considered in its entirety. (*People* v. *Sing*, 42 Cal. App. 385 [183 Pac. 865].) It is not clear why the bank should advance the appellant the $280 before all of the necessary papers were completed. This, however, is not sufficient to divide the transaction into two parts for the reason that the bank did require a Borrower's Completion Certificate to be signed and appellant did procure the signatures of the Knittles on the Borrower's Completion Certificate in such a manner that the Knittles did not know that they were signing it and at the time appellant knew that the equipment had not been installed. Further, appellant knew that the Knittles would not have signed the Borrower's Completion Certificate had they known that they were signing such a paper. The first Modernization Note, dated August 22, 1940, was cancelled. The Knittles were no longer liable thereon. Their liability was only upon the second note which was obtained in the manner described by tricking them into signing the "Borrower's Completion Certificate" which was required for the necessary completion of the transaction. The procuring of the order, the discounting of the paper, the procuring of additional signatures, the failure to install the equipment is all one transaction, and from start to finish, it is impregnated with fraud. Standing by itself, even without the showing of additional similar transactions, the evidence is sufficient to support a finding of guilt on the first count as charged.

█ If one is induced by false representation as to a past or existing fact to part with title to personal property, the law recognizes such a crime as the obtaining of that property by false pretenses chargeable as theft. On the other hand, where possession merely has been parted with and the transaction is fraudulently secured with the present felonious intent to convert the property so acquired, the offense is recognized as larceny. (*People* v. *Campbell*, 127 Cal. 278 [59 Pac. 593].)

█ It is apparent from the entire transaction that the jury was justified in the belief that the Knittles did not intend to part with the title to the note until the Bank of America, to which the application for the credit or loan was directed,

accepted the application for the loan or credit and were satisfied that all materials had been furnished and satisfactorily installed. The note itself, on the reverse side, specifically provided, in the proposed assignment form, that the work and the material supplied had been delivered. The Knittles, as well as appellant, therefore, knew that the appellant could not rightfully assign the note to the bank without delivery having been made. The credit statement, furnished by the Knittles, was directed to that same bank and recites:

"To Bank of America. . . .

"The following information . . . is furnished for the purpose of inducing you to grant credit under the terms of Title 1 of the National Housing Act. . . .

"We authorize you . . . and agree that it (credit statement) shall remain your property whether or not our note is finally accepted by you. . . . that if the loan is granted to us or our note purchased, the entire proceeds will be used exclusively in payment for alterations. . . . "

A signed accompanying statement of appellant Selk provided that:

"To Bank of America. . . .

"In consideration of your accepting the note of Albert S. and Carmela M. Knittle, for $321.94, dated August 24th 1940 . . . . . .19. . ., I hereby certify that all articles and materials contracted for have been furnished and installed and the work fully completed, that the signatures on the note and Completion Certificate are genuine, that the Completion or Installation Certificate was signed after the articles and materials contracted for had been furnished and installed and the work fully completed. . . . "

Mr. Knittle also testified that, "I knew I was signing a Note, but I did not think he would get the money without delivering the equipment."

Six forms of verdicts were presented to the jury, one of guilty and one of not guilty as to each count. The trial court, after reading the six forms of verdict, instructed the jury that, "Your verdict may be in one of the following forms:".

It is apparent from the evidence that the allegations of count one received sufficient support to warrant a conviction thereon. The conviction on the second and third counts must fall for the reasons expressed. (*People* v. *Shwartz, supra.*)

▮ Appellant next contends that his cross examination was unduly limited on the question of a delay in the delivery of equipment. An examination of the reporter's transcript shows that an extended cross examination in reference to this subject was permitted. Communications by appellant and a certain manufacturing concern in reference to the generating plant were received in evidence. On September 10, 1940, more than two weeks after appellant described the machinery to be installed and took the order for the generator, appellant wrote this letter to the manufacturing concern: "As per our conversation on the phone today, I wish to again state that I am interested in a 1,000 Watt, 32 Volt generator which can be arranged to be stopped by some kind of voltage control when the batteries are fully charged. . . . advise me immediately what you can build for us and at what price. . . . "

Appellant claims that a generator finally arrived on October 25, 1940, which was intended for the Knittles, but was returned due to faulty construction; that about December 27, 1940, another one arrived which appellant claims was satisfactory, but that he did not deliver it to the Knittles on advice of his attorney. Three pages of cross examination on the claimed causes of delay were permitted by the court and appear in the record. No substantial injury has been shown by any claimed limitation of cross examination, which showing is essential. (*People* v. *Watts,* 198 Cal. 776, 792 [247 Pac. 884].)

▮ Appellant endeavored to show on cross examination, prejudice of Mr. Knittle in that he permitted Mrs. Knittle to file an affidavit in an injunction suit to restrain the appellant from doing business under the name of Delco Light Sales, and that the jury should have had the benefit of any evidence of bias or prejudice in order to weigh the proof of the testimony of the complainants, the Knittles. It is sufficient to say in this respect that all of the essential facts testified to by the Knittles are admitted. (*People* v. *Terkanian,* 27 Cal. App. (2d) 460 [81 Pac. (2d) 251]; *People* v. *Kelly,* 32 Cal. App. (2d) 624 [90 Pac. (2d) 605].)

▮ Appellant contends that evidence of other similar transactions was not admissible against him. Evidence of other similar transactions with the same common design as the criminal enterprise charged in the indictment is admissible to prove a general plan or scheme to defraud as well as to prove consciousness of guilt. (*People* v. *Humphrey,* 27

Cal. App. (2d) 631, 639 [81 Pac. (2d) 588]; *People* v. *Thorne,* 10 Cal. (2d) 705, 708 [76 Pac. (2d) 493].)

■ Appellant sets forth a number of questions propounded by the district attorney in reference to the difficulties appellant had with other customers. It is appellant's contention that the court failed to instruct the jury to disregard those questions after the court had agreed to do so. It should be noted at the outset that this subject was opened by appellant at the start of his direct testimony. It appears in the record as follows: "Q. Have you had difficulties with any of your transactions other than those which have been brought to the attention of the court here?" Mr. Neblett's objection to this question of appellant's counsel was overruled. Answer by Carl Selk: "None." After appellant opened up this line of inquiry, the district attorney on cross examination asked about many other instances where it was claimed appellant failed to deliver the generator plants ordered. ■ If appellant sought to have the court give a special instruction in reference to certain of the transactions about which appellant claimed he had no knowledge, such an instruction should have been submitted to the court by appellant, otherwise appellant is in no position to complain. (*People* v. *More,* 10 Cal. App. (2d) 144, 146 [51 Pac. (2d) 175].) Inasmuch as appellant opened up the subject of difficulty in other transactions, appellant himself cannot close the door to an inquiry concerning those other transactions. (*People* v. *Madison,* 3 Cal. (2d) 668, 678 [46 Pac. (2d) 159].)

None of the other claimed errors are meritorious.

The judgment of conviction and the order denying a new trial as to the first count are affirmed. As to the second and third counts, the judgment and order are reversed.

Barnard, P. J., and Marks, J., concurred.