## GRAHAM v. UNITED STATES.

### No. 10666.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 17, 1950.

Decided Dec. 28, 1950.

Writ of Certiorari Denied April 30, 1951.
See 71 S.Ct. 741.

Mr. T. Emmett McKenzie, Washington, D. C., with whom Mr. Kenneth D. Wood, Washington, D. C., was on the brief, for appellant.

Mr. Joseph F. Goetten, Asst. U. S. Atty., Washington, D. C., with whom Messrs. George Morris Fay, U. S. Atty., and Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee. Mr. Richard M. Roberts, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before WILBUR K. MILLER, FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

The appellant, an attorney, was indicted in two counts for grand larceny under section 2201 of Title 22 of the District of Columbia Code (1940 ed.). He was charged with having stolen money from Francisco Gal in the amounts of $100 and $1,900. He appeals from a judgment and conviction entered upon a verdict of guilty.

The complaining witness, Francisco Gal, consulted appellant in his professional capacity. Gal had been arrested and charged with disorderly conduct, and had forfeited

$25 as collateral. He was seeking American citizenship and was apprehensive that the arrest would impede or bar his attainment of that goal. An immigrant employed as a cook, his command of the English language was far from complete. He testified that appellant Graham told him that he wasn't sure what he could do, that Graham would "have to talk to the policeman. You have to pay money for that, because the money is talk." He further testified that Graham told him he would charge him $200 for a fee; that he would have to pay an additional $2,000 for the police; that Graham said "don't mention the money for nobody and for the police either." As a result, Gal testified that he paid the appellant $300 on February 2, 1950 (of which, he said, $200 was paid as a legal fee), and $1,900 on February 3, 1950. The police officer who originally had arrested Gal testified that he came to appellant's office, and after talking with Graham, told Gal that he wasn't in any trouble. Gal testified to substantially the same effect. The officer testified that Graham did not then or at any other time offer or give him money. The appellant testified that the entire payment was intended as a fee for legal services; that he had never mentioned money for the police; that no part of the money was in fact paid to the police or anyone else, but was kept by the appellant.

Appellant's principal contentions are: First, that the evidence supports the proposition that Gal voluntarily gave Graham complete title to the money and therefore appellant is entitled to a directed verdict; and, second, that the trial court's charge to the jury was erroneous in not sufficiently distinguishing between the situation where one obtains complete title to another's property by fraud or trick and the case where possession only is obtained.

Section 2201 of Title 22 of the District of Columbia Code provides as follows: "Whoever shall feloniously take and carry away anything of value of the amount or value of $50 or upward, including things savoring of the realty, shall suffer imprisonment for not less than one nor more than ten years."

■■ Interpreting this statute, this court has held that "one who obtains money from another upon the representation that he will perform certain service therewith for the latter, intending at the time to convert the money, and actually converting it, to his own use, is guilty of larceny". Means v. United States, 62 App.D.C. 118, 119, 65 F.2d 206, 207. See also Talbert v. United States, 42 App.D.C. 1, 16; Beck v. United States, 62 App.D.C. 223, 66 F.2d 203; John v. United States, 65 App.D.C. 11, 12–13, 79 F.2d 136, 137–138; Bimbo v. United States, 65 App.D.C. 246, 249, 82 F.2d 852, 855; Smith v. People, 53 N.Y. 111; Martin v. State, 123.Ga. 478, 51 S.E. 334; Crum v. State, 148 Ind. 401, 47 N.E. 833; People v. Martin, 116 Mich. 446, 74 N.W. 653. In classic terminology, "the distinction drawn by the common law is between the case of one who gives up possession of a chattel for a special purpose to another who by converting it to his own use is held to have committed a trespass, and the case of one who, although induced by fraud or trick, nevertheless actually intends that title to the chattel shall pass to the wrongdoer." United States v. Patton, 3 Cir., 1941, 120 F.2d 73, 76. See also People v. Miller, 169 N.Y. 339, 62 N.E. 418; Loomis v. People, 67 N. Y. 322; Hildebrand v. People, 56 N.Y. 394; Regina v. Russet, 2 Q.B. 312 (1892); Rex v. Pear, 1 Leach. 212, 168 Eng.Rep. 208 (1779); First Report of the Commissioners on Criminal Law, p. 8 (1834), reprinted in Michael & Wechsler, Criminal Law and Its Administration, p. 417 (1940).

■ We now turn to appellant's first contention, that under the evidence in the case the court should have directed a verdict for the defendant. We think this contention without merit. If the jury believed Gal's testimony, and did not believe that of the defendant, it was possible for the jury to conclude beyond a reasonable doubt that the defendant fraudulently induced Gal to give him $2,000 to be used for a special purpose, i. e., to bribe the police, that the defendant did not intend so to use the money, and converted it to his own use. Under

the rule stated above, this would be larceny by trick.

Thus, in the Means case, supra, the defendant was convicted of the crime of larceny under the following circumstances: After the kidnapping of the infant son of Charles Lindbergh, the defendant in an interview with Mrs. McLean persuaded her that he could assist in locating and recovering the kidnapped baby, stating that if Mrs. McLean would give him $100,000 he would use that sum to pay the ransom and secure the return of the child. On the basis of these representations he secured the money from Mrs. McLean. His representations were fraudulent and he intended at the time to convert the money to his own use, and actually so converted it. People v. Edwards, 72 Cal.App. 102, 236 P. 944, provides an even closer precedent. There the defendant took money from the complainant, representing to her that it would be used to bribe officers investigating criminal activities by her husband. The complainant did not know exactly how the defendant was going to use the money but understood that it was going to be used in some manner to corrupt the police. The court, in sustaining a conviction for larceny, held that under these circumstances "title would remain in [the complainant] until the accomplishment of the purpose for which she gave [the defendant] the money, i. e., until its final delivery by [him] to the officers whom she was led to believe were to be bribed." 236 P. at 952. Similarly, in People v. Shwartz, 43 Cal.App. 696, 185 P. 686, a conviction for larceny was upheld where the defendant had fraudulently represented

to the complainant that he had influence with the police commission and for a certain sum of money could and would obtain a license renewal for her business, and on the basis of those representations obtained money which he converted to his own use. The court rejected the defendant's contention that larceny by trick was not committed because title to the money had passed to him, holding that the complainant "did not intend to part with the title to the money" until it should be delivered to "an unidentified but supposedly existing corrupt public official". 185 P. at 688. See, also, Martin v. State, supra.

 The next question is whether Judge Bailey properly charged the jury as to the offense. We consider that the charge, in the light of the evidence, included adequate practical recognition of the points appellant was trying to make.[1] The court first defined larceny by trick in general terms and then, applying the law to the case at hand, charged the jury that if there was no agreement that the money was to be used as a bribe or to pay the police, or if the money was paid as a fee for services rendered or to be rendered, they must find the defendant not guilty. One or two sentences in the charge, taken out of context, might be criticized as containing incomplete definitions of larceny. But the charge taken as a whole appears to us to be an adequate statement of the law applicable to the evidence. Certainly it was fair to the defendant. The alternatives presented by the evidence were impartially discussed. The jury in effect was instructed that there could be a verdict of guilty

---

1. Appellant did not submit any particular form of charge which he desired delivered to the jury. And appellant's general request prior to rendition of the charge, that the court charge that if Gal gave Graham the money "intending that he be able to pass title to it" there was no larceny, is an incorrect statement of the law. In many situations, as in the Means case, supra, the owner intends that the taker shall have power to pass title. Further, appellant excepted "to that portion of Your Honor's charge in which you stated that where a person obtains the property of another by trick or fraud, it is larceny. Our position is

that only where he obtains custody as distinguished from the possession, is it larceny." (Jt. App. 77A) The meaning of this exception is somewhat obscure. Certainly it does not accurately describe the court's charge as a whole or even completely describe the part under reference. And, as we have noted, the distinction drawn at common law as to larceny was between "possession" and "title," and not between "custody" and "possession." Appellant's brief makes clear that the first mentioned distinction is the one that he was trying to point out. We shall approach the matter on that basis.

only if they found that the money was given to Graham under an agreement by which he was to use it to bribe or pay the police, and if they further found that Graham then intended not to use it under that agreement, but instead to keep it for his own use, and that he did convert the money to his own use. The court adequately set forth the law of larceny by trick without a technical discussion of "title," "possession" and "custody." (We may note parenthetically that this court did just that in its opinion in the Means case, supra, and that Judge Bailey evidently relied on that case in preparing his charge.) It is enough that the trial court correctly charges the jury as to the law with respect to the particular situation before it, and leaves no doubt as to under what circumstances the crime can be found to have been committed. The charge did that. Means v. United States, supra; see Beck v. United States, supra, at 66 F.2d 205.

■ Appellant also makes the point that on direct examination the complaining witness was asked leading questions, and that in fact the first mention of any payment to the police was contained in a leading question. The short answer to this is that the appellant made no objection to the question at the time. And the whole tenor of the witness' testimony indicates that nothing was thus elicited from him which would not have appeared in normal course.

The judgment of the District Court is Affirmed.