2004 WY 101

**Steven J. GILES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 02–63.

Supreme Court of Wyoming.

Sept. 2, 2004.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Kerin, Senior Assistant Appellate Counsel.

Representing Appellee: Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] After trial, a jury convicted appellant Steven J. Giles (Giles) of immodest, immoral, or indecent liberties with a child in violation of Wyo. Stat. Ann. § 14–3–105 (LexisNexis 2003).[1] Giles challenges the constitutionality of that statute. After careful study, we reject Giles' challenges. Nevertheless, because the jury was not adequately instructed, we reverse and remand.

---

1. Wyo. Stat. Ann. § 14–3–105 (LexisNexis 2003), in applicable part, provides:

(a) Except under circumstance constituting sexual assault in the first, second or third degree as defined by W.S. 6–2–302 through 6–2–304, any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony. Except as provided by subsection (b) of this section, a person convicted under this section shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both.

. . .

(c) As used in this section, "child" means a person under the age of eighteen (18) years.

### ISSUES

[¶ 2] Giles initially set forth the issues on appeal as:

I. Whether there was insufficient evidence to convict appellant, given the manner in which the jury was instructed[.]

II. Whether the trial court erred in refusing appellant's requested instructions concerning consent and "totality of the circumstances"[.]

After this court requested additional briefing to address constitutional issues concerning § 14-3-105, Giles supplemented the issues on appeal to include:

I. Is W.S. § 14-3-105 unconstitutional as it is facially vague?

I. II. Is W.S. § 14-3-105 unconstitutional as applied in appellant's case?

### FACTS

[¶ 3] Early in the morning of April 3, 2001, a 13-year-old girlfriend of MB (the subject minor in this case) rented the bridal suite at the Clarion Inn in Gillette, Wyoming. Giles, along with several other friends, accompanied the girl to the motel. April 3 was a school day and, just before school was about to begin, Giles and others left the motel and picked up MB at the bus stop where she waited to board the school bus to junior high school.

[¶ 4] Arriving back at the motel, MB and other members of the group smoked marijuana and used methamphetamine. After a time, Giles and MB retired to a bedroom in the suite. MB was 14 years of age at the time, having been born March 19, 1987; Giles had just turned 18 days earlier, having been born on March 29, 1983. MB considered Giles her boyfriend because they had been seeing each other since October of 2000 and had had sexual intercourse on one previous occasion. On this day, Giles and MB had sexual intercourse twice. While still in the bedroom, a phone call came up to the room from a member of the motel staff warning the group that the police were there. Giles and MB hurriedly got dressed and attempted to leave the room. However, the police arrived before this could be accomplished and detained Giles, MB, and other members of the group. Upon questioning by the police, Giles admitted using marijuana and methamphetamine at the motel and admitted having sexual intercourse with MB on two occasions in the bedroom of the suite.

[¶ 5] At trial, MB testified that during her first uncharged sexual encounter with Giles, the group smoked marijuana, she kissed Giles, and then had sex with him. This activity was not at the urging of Giles, and there was no discussion of their respective ages. MB further testified that between this first encounter and the incident at issue in this case, Giles did not bring up the subject of having intercourse with her again, nor did they have sexual intercourse during this time frame. In fact, MB testified that she did not think Giles was interested in having sex with her. MB also admitted that she had sexual intercourse with another partner, prior to her first encounter with Giles. In addition, MB testified that she did not feel Giles was a lot older than she and that she felt she was more mature than Giles. MB further testified to what transpired at the Clarion Inn on April 3, 2001. These facts were not contested at trial. Rather, Giles' defense counsel admitted that the acts of sexual intercourse had taken place, but argued that these actions were not "immodest," "immoral," or "indecent" liberties. Giles did not testify.

[¶ 6] At the jury instruction conference, Giles' attorney objected to two jury instructions submitted by the State. The first instruction offered definitions to the jury concerning the words "immoral," "immodest," and "indecent," while the second instruction informed the jury that consent was not a defense to the charge when the victim is less than sixteen years of age. The district court accepted these instructions, and eventually they were given to the jury.

[¶ 7] Defense counsel offered jury instructions B, C, and E. These instructions were based on *Pierson v. State*, 956 P.2d 1119 (Wyo.1998), and sought to introduce consent as an issue, despite MB's age, and told the jury to consider the totality of circumstances in deciding whether Giles' conduct amounted to "immoral," "immodest,"

and "indecent" liberties with a child. The court refused these instructions.

[¶ 8] During jury deliberations, the jury submitted two questions to the district court. The initial question asked whether a person under sixteen years of age could consent to sexual intercourse. The second question asked, in effect, whether the jury must find that Giles' actions were immodest, immoral, and indecent. In responding to the jury, the district court advised the jury to refer to particular jury instructions already given and told them that the terms "immodest, immoral, or indecent liberties" were in the disjunctive, representing a choice among alternative things. Fifty-eight minutes later, the jury returned a guilty verdict.

[¶ 9] This case was initially assigned to the expedited docket and considered upon the briefs. Subsequently this court advised the parties that it desired supplemental briefing and oral argument on the constitutionality of Wyo. Stat. Ann. § 14–3–105(a).

## STANDARD OF REVIEW

 [¶ 10] We review constitutional issues *de novo*. *Joyner v. State*, 2002 WY 174, ¶ 7, 58 P.3d 331, ¶ 7 (Wyo.2002) (citing *Taylor v. State*, 7 P.3d 15, 19 (Wyo.2000)). *See also Pope v. State*, 2002 WY 9, ¶ 14, 38 P.3d 1069, ¶ 14 (Wyo.2002). In *Browning v. State*, 2001 WY 93, ¶ 12, 32 P.3d 1061, ¶ 12 (Wyo. 2001); *Saiz v. State*, 2001 WY 76, ¶ 10, 30 P.3d 21, ¶ 10 (Wyo.2001); *Campbell v. State*, 999 P.2d 649, 657 (Wyo.2000); *Scadden v. State*, 732 P.2d 1036, 1041–42 (Wyo.1987); *Keser v. State*, 706 P.2d 263, 266 (Wyo.1985); *Sorenson v. State*, 604 P.2d 1031, 1033 (Wyo. 1979); and *Sanchez v. State*, 567 P.2d 270, 274 (Wyo.1977), we also recognized that there is a strong presumption in favor of the constitutionality of a statute, with all doubt resolved in its favor.

[¶ 11] However, in *Hobbs v. State*, 757 P.2d 1008, 1011 (Wyo.1988) (quoting *Britt v. State*, 752 P.2d 426, 428 (Wyo.1988)), we set forth:

"The constitutional standard for vagueness of a criminal statute has been defined by this court. 'An ordinance or statute is void for vagueness if it fails to give a

person of ordinary sensibility fair notice that the contemplated conduct is forbidden.' *Keser v. State*, Wyo., 706 P.2d 263, 266 (1985), quoted in *Shunn v. State*, Wyo., 742 P.2d 775, 777 (1987). While there is a strong presumption of constitutionality, '[a] statute is unconstitutionally vague when "men of common intelligence must necessarily guess at its meaning and differ as to its application."' *Jenkins v. Werger*, 564 F.Supp. 806 (D.Wyo.1983), quoted in *Shunn v. State*, supra. ' "The underlying principle is that no man shall be held criminally liable for conduct which he could not reasonably understand to be proscribed." ' *Keser v. State*, supra, at 265–266 (quoting *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954))." (Citation omitted.)

See also *Shunn v. State*, Wyo., 742 P.2d 775 (1987). The requirement of fair notice is a due process concept. *Armijo v. State*, *[678 P.2d 864 (1984)]*, supra; *Dover v. State*, Wyo., 664 P.2d 536 (1983).

*In accord see Caton v. State*, 709 P.2d 1260, 1270–71 (Wyo.1985) and *Carfield v. State*, 649 P.2d 865, 870 (Wyo.1982).

[¶ 12] Nevertheless, we pointed out in *Sorenson v. State*, at 1033:

[T]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "(i)n most English words and phrases there lurk uncertainties." *Robinson v. United States*, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. Cf. *Nash v. United States*, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913); *United States v. National Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). All the Due Process Clause requires is that the law give *s efficient warning that men may conduct themselves so as to avoid that which is forbidden.* (Emphasis supplied and footnote omitted.) *Rose v.*

*Locke,* 423 U.S. 48, 49–50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975).

and

This Court ... has consistently held that lack of precision is not itself offensive to the requirements of due process. "... [T]he Constitution does not require impossible standards"; all that is required is that the language *"conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices ..."* United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877. (Emphasis supplied.) *Roth v. United States,* 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1957).

[¶ 13] We have also consistently held that "when evaluating a statute to determine whether it provides sufficient notice, we must again consider not only the statutory language but also any prior court decisions which have placed a limiting construction on the statute or have applied it to specific conduct." *Griego v. State,* 761 P.2d 973, 976 (Wyo.1988) (citing *Ward v. Illinois,* 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977); *Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *Wainwright v. Stone,* 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973); *Winters v. New York,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948)). Further, we have recognized that "[i]f the statute has been previously applied to conduct identical to that of appellant, he cannot complain that notice was lacking." *Id.* (citing *Schwartzmiller v. Gardner,* 752 F.2d 1341, 1348–49 (9th Cir.1984) and *Rose v. Locke* ).

▮ [¶ 14] In addition, it is well established that a trial court has a duty to instruct a jury on the general principles of law applicable to the case at issue. A trial court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found. Instructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation. *Black v. State,* 2002 WY 72, ¶ 5, 46 P.3d 298, ¶ 5 (Wyo.2002) (citing *Ogden v. State,* 2001 WY 109, ¶ 8, 34 P.3d 271, ¶ 8 (Wyo.2001); *Coburn v. State,* 2001 WY 30, ¶ 9, 20 P.3d 518, ¶ 9 (Wyo.2001); *Merchant v. State,* 4 P.3d 184, 190 (Wyo. 2000)). Prejudice will be determined to exist only where an appellant demonstrates that the instruction given confused or misled the jury with respect to the proper principles of law. *Black v. State,* at ¶ 6 (citing *Lane v. State,* 12 P.3d 1057, 1061 (Wyo.2000); *Wilson v. State,* 14 P.3d 912, 916 (Wyo.2000)).

## DISCUSSION

### Constitutionality of Wyo. Stat. Ann. § 14–3–105

### *"Facial" Challenge*

▮ [¶ 15] A statute may be challenged for constitutional vagueness "on its face" or "as applied" to particular conduct. *Griego v. State,* at 975.[2] When challenging a statute for unconstitutional facial vagueness the party must demonstrate that the statute reaches a substantial amount of constitutionally protected conduct, or that the statute specifies no standard of conduct at all. *Browning v. State,* at ¶ 11; *Saiz v. State,* at ¶ 9; *Campbell v. State,* at 657; *Moore v. State,* 912 P.2d 1113, 1115 (Wyo.1996); *Lovato v. State,* 901 P.2d 408, 412 (Wyo.1995); *Ochoa v. State,* 848 P.2d 1359, 1363 (Wyo. 1993); *Griego v. State,* at 975; and *Scadden v. State,* at 1041–42. As stated in *Griego* at 975:

When a statute is challenged for vagueness on its face, the court examines the statute not only in light of the complainant's conduct, but also as it might be applied in other situations. See *Schwartzmiller v. Gardner,* 752 F.2d 1341 (9th Cir.1984). Facial review is not appropriate in all cases.

---

**2.** As identified in *Alcalde v. State,* 2003 WY 99, ¶ 13, 74 P.3d 1253, ¶ 13 (Wyo.2003), a statute may be challenged for vagueness "on its face" or "as applied" to particular conduct. When a statute is challenged for vagueness on its face, the court examines the statute not only in light of the complainant's conduct, but also as it might be applied in other situations. On the other hand, when a statute is challenged on an "as applied" basis, the court examines the statute solely in light of the complainant's specific conduct.

"[F]acial vagueness review is not common because ordinary canons of judicial restraint do not permit a party whose particular conduct is adequately described by a criminal statute to 'attack [the statute] because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit.'" (Emphasis omitted.) *Id.* at 1346 (quoting *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974)).

This principle is sometimes described in terms of standing. *Parker v. Levy*, supra 94 S.Ct. at 2561; *State v. Hegge*, 89 Wash.2d 584, 574 P.2d 386, 389 (1978). *Ochoa v. State*, at 1363, goes on to explain:

A challenge for vagueness can be a "facial challenge" or an "as applied to the facts" challenge. *Griego*, 761 P.2d at 975. However, a "facial challenge" is available in only two situations: (1) when the statute reaches a substantial amount of constitutionally protected conduct, and (2) when the statute is shown to specify no standard of conduct at all. If neither of these situations exists, then only an "as applied" challenge is available. *Griego*, 761 P.2d at 975.

Neither situation exists under these facts. Although Ochoa argues that consensual sexual relations are a fundamental right protected by the constitution, that argument is without merit because this case does not involve two consenting adults. *Scadden v. State*, 732 P.2d 1036 (Wyo.1987). Therefore, no fundamental constitutional right is broached. Additionally, we have previously held that our indecent liberties statute is not one of those statutes which have no standards at all. *Griego*, 761 P.2d at 976. Thus, Ochoa can only make an "as applied" argument.

When considering if Giles has made the requisite showing to make a "facial" constitutional challenge to § 14–3–105, we come to the same conclusion as did the court in *Ochoa*. We hold Giles has failed to evidence that the statute reaches a substantial amount of constitutionally protected conduct.

[¶ 16] In supplemental briefing Giles does not present a detailed argument on the first identified criteria, that the statute reaches a substantial amount of constitutionally protected conduct. Indeed, although many defendants in past cases involving challenges to the constitutionality of § 14–3–105 have asserted that sexual relations involve protected privacy rights, this court has made it clear that such rights apply only to sexual relations between adults and not those involving an adult and a minor. *Ochoa v. State*, at 1363; *Scadden v. State*, at 1040. In a similar vein, although defendants have tried to argue the statute affected a constitutionally protected religious right and the right to free speech, this court disagreed reasoning that such arguments were groundless. *Moore v. State*, at 1116, and *Ochoa v. State*, at 1364.

[¶ 17] Next, Giles' makes a due process/equal protection argument that the statute allows arbitrary and discriminatory enforcement that affects a fundamental constitutional right. However, this court recently rejected such claims.

Appellant argues that the decision to charge him but not the minor female violated his equal protection rights under the Fourteenth Amendment and the Wyoming Constitution. In essence, Appellant has raised two separate issues here. First, Appellant argues that the only distinction between him and the victim is their sex. He posits this as the probable basis for the prosecutor's decision to charge him and not the victim. This is a claim of selective prosecution. In his second argument, Appellant argues that he and the victim are similarly situated under § 14–3–105, and charging him under the statute and not the victim violated his equal protection rights.

A selective prosecution exists when it is demonstrated that others similarly situated have not been prosecuted and the prosecution of the defendant is based on an impermissible motive. *Crozier v. State*, 882 P.2d 1230, 1235 (Wyo.1994). "The impermissible motivation must be demonstrated by showing that the charge was deliberately based on an unjustifiable standard or designed to inhibit the exercise of a constitutional right by the accused." *Id.* Appellant claims that he was similarly situated with the victim, who was not charged. From that, Appellant draws the conclusion

that the only basis for prosecuting him and not the victim must be his sex. Appellant's argument is purely speculative and ignores some salient facts that distinguish the victim's position from his. The prosecutor could have relied upon any or all of the following factors in deciding to prosecute Appellant: (1) the age difference between him and the victim; (2) the relative maturity levels of the parties related to their ages; and (3) Appellant's actions, such as supplying alcohol to the victim. Appellant has failed to show that he is, in any way, similarly situated as the victim, and his claim that the decision to prosecute him was based solely on his sex ignores the facts in the record and is only speculation.

An equal protection analysis begins with the threshold question of whether the statute at issue treats similarly situated persons unequally. *Ellett [v. State ]*, 883 P.2d [940,] at 944 [ (Wyo.1994) ]. Appellant and the victim are similarly situated within the context of § 14–3–105 because they are both a "child" as defined in section (c) of the statute. The statute is treating the similarly situated persons unequally because one is being subjected to a criminal penalty and the other is not.

The next step of the analysis is to determine what level of scrutiny we apply to determine whether the unequal treatment violates equal protection. The classification at issue here involves age—persons under eighteen years old. Age is not a protected class. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 314–15, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976); *People v. Reed*, 148 Ill.2d 1, 169 Ill.Dec. 282, 591 N.E.2d 455, 457–58 (1992). Therefore, we need only determine whether § 14–3–105 is rationally related to a legitimate state objective. As noted above, the purpose of § 14–3–105 is to protect children from sexual exploitation and abuse. There can be absolutely no question that such protection is a legitimate state objective. Section 14–3–105 bears a rational relationship to that objective and is a reasonable method of obtaining it because the statute recognizes that any person, including minors, is capable of preying upon children. The statute does not violate Appellant's right to equal protection. *Misenheimer v. State*, 2001 WY 65, ¶¶ 16–19, 27 P.3d 273, ¶¶ 16–19 (Wyo.2001).

[¶ 18] While Giles tries to differentiate the facts in this case from the facts established in *Misenheimer*, we do not draw any substantial distinctions. Importantly, this case involved an adult (although Giles turned eighteen just days prior to the event) and a minor, age fourteen, while *Misenheimer* involved two minors, ages seventeen and thirteen. Also, in this case, as in *Misenheimer*, there is an age difference between Giles and the victim; the relative maturity levels of the parties related to their ages may have been a determinative factor; and drugs were found at the scene of the motel. Consequently, we cannot conclude that Giles has shown that a fundamental constitutional right has been broached.

[¶ 19] Furthermore, this court has repeatedly held that § 14–3–105 is not one of those statutes which has no standards at all. *Ochoa v. State*, at 1363, and *Griego v. State*, at 976. *See also Schmidt v. State*, 2001 WY 73, 29 P.3d 76 (Wyo.2001); *Misenheimer v. State*, 2001 WY 65, 27 P.3d 273; *Pierson v. State*, 956 P.2d 1119; *Moore v. State*, 912 P.2d 1113; *Lovato v. State*, 901 P.2d 408; *Britt v. State*, 752 P.2d 426 (Wyo.1988); *Ketcham v. State*, 618 P.2d 1356 (Wyo.1980); and *Sorenson v. State*, 604 P.2d 1031. Although Giles tries to argue that some of these cases are distinguishable given the particular facts in his case, he does not provide adequate argument that the statute provides no standards at all as required. The further arguments presented by Giles intermingle his "facial" and "as applied" constitutional challenges. Accordingly, we will address Giles' remaining arguments as an "as applied" challenge.

### *"As Applied" Challenge*

[¶ 20] Giles argues that § 14–3–105 fails to describe with particularity what acts are considered criminal because it relies on undefined terms. Thus, Giles asserts that he was afforded inadequate prior notice that the acts in which he engaged constituted a viola-

tion of the indecent liberties statute. Rather, Giles contends that it was only after the jury passed judgment in his case, based on the undefined terms of "immoral," "immodest," and "indecent," that he could have understood that his acts constituted criminal conduct. Upon consideration, we reject Giles' argument.

[¶ 21] In *Sorenson v. State,* at 1034–35 (citations and footnote omitted), this court addressed a similar argument:

> If the three words "immoral, immodest and indecent," standing alone, were our only consideration, we might agree with appellant. Their meanings to each of several persons of ordinary intelligence may differ to a point wherein it could not be said that the conduct required or forbidden is set forth with reasonable certainty. On the other hand, strict application of the definitions of the words could lead to the conclusion that a person of ordinary intelligence would know that conduct such as fondling the breast of a twelve-year-old child is proscribed by them and is clearly prohibited by the "standard of morality" of this society.
>
> In any event, we need not consider the three words on their own connotation as suggested by appellant. They are accompanied in the statute by the words "liberties" and "child" which narrow down and designate with reasonable certainty the acts and conduct required or forbidden. "Liberties" are such as common sense of society would regard as indecent and improper. "Indecent liberties" is selfdefining. "Indecent liberties" and "indecent assault" are convertible terms. Accordingly, the statute is not unconstitutionally vague.

We went on to state in *Sorenson,* at 1035, that:

> "True, what shall be regarded as 'immodest, immoral and indecent liberties' is not specified with particularity, but that is not necessary. The indelicacy of the subject forbids it. The common sense of the community, as well as the sense of decency, propriety, and morality which people generally entertain, is sufficient to apply the statute to each particular case, and point out unmistak-

ably what particular conduct is rendered criminal by it. *State v. Millard,* 18 Vt. 574, 46 Am.Dec. 170...." *Dekelt v. People,* 44 Colo. 525, 99 P. 330, 331–332 (1909).

This position was reiterated in *Gallegos v. People,* 176 Colo. 191, 489 P.2d 1301 (1971).

We do not analyze a vagueness challenge in a vacuum but rather in the context of the statute in which the language is incorporated. *State v. Foster,* 91 Wash.2d 466, 589 P.2d 789, 795 (1979).

> "Due process does not require that this statute, with its beneficent purpose, spell out in exact words what constitutes the conduct made punishable." *Millhollan v. State,* 221 Ga. 165, 143 S.E.2d 730, 733 (1965); *Anderson v. State,* Alaska, 562 P.2d 351 (1977).

> "Although the language of the statute is broad and the prohibited behavior is very general, this seems *necessary* in the nature of its subject matter...." (Emphasis not supplied.) *People v. Beaugez,* 232 Cal.App.2d 650, 43 Cal. Rptr. 28, 33 (1965).

> "The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. We agree with the Kentucky court when it said: 'We believe that citizens who desire to obey the statute will have no difficulty in understanding it....' [Citation.]" *Colten v. Commonwealth of Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972).

[¶ 22] This court further stated in *Burton v. State,* 2002 WY 71, ¶ 24, 46 P.3d 309, ¶ 24 (Wyo.2002):

> The crime of taking indecent liberties with a child is set out in Wyo. Stat. Ann. § 14–3–105(a) (LexisNexis 2001) ... The trial court instructed the jury on the elements of the crime of taking indecent liberties with a child in accordance with

§ 14–3–105(a). Burton suggests that the court should have defined the phrase "immodest, immoral or indecent liberties" for the jury. This court has, however, repeatedly refused to precisely define the phrase "immodest, immoral or indecent liberties." See e.g., *Chapman v. State*, 2001 WY 25, ¶ 28, 18 P.3d 1164, ¶ 28 (Wyo.2001); *Sorenson v. State*, 604 P.2d 1031, 1034–35 (Wyo.1979). Instead, the jury is allowed to apply its common sense by looking at the totality of the circumstances pertaining to the culpability of the accused's conduct. *Chapman*, at ¶ 28.

[¶ 23] Moreover, we have consistently held that, when evaluating a statute to determine whether it provides sufficient notice, we must consider 1) not only the statutory language but also any prior court decisions which have placed a limiting construction on the statute or have applied it to specific conduct, and 2) if the statute has been previously applied to conduct identical to that of appellant. *Griego v. State*, at 976. Numerous opinions of this court on the subject have made it evident that an adult having sexual intercourse with a minor constitutes "immoral," "immodest," and "indecent" conduct under § 14–3–105. In fact, lesser but also reprehensible sexual contact with a minor also constitutes a violation of the statute. As stated in *Derksen v. State*, 845 P.2d 1383, 1388 (Wyo.1993), wherein an adult male bound a ten-year-old female's hands, removed her clothes and fondled her, later forced her to touch his penis and put it into her mouth, and displayed to the victim lewd pictures of himself and the victim's mother:

> In *McArtor [v. State*, 699 P.2d 288 (Wyo. 1985)], a conviction for taking immodest, immoral or indecent liberties was affirmed based on evidence of consensual sexual intercourse. *McArtor*, 699 P.2d at 294. As *Sorenson, Montoya [v. State*, 822 P.2d 363 (Wyo.1991)] and *McArtor* illustrate, *the offense of taking immodest, immoral or indecent liberties punishes conduct which includes not only sexual intru-*

sion, but also sexual contact and consensual sexual intercourse.*

(Emphasis added.)[3] In *Ketcham v. State*, 618 P.2d 1356, we upheld the revocation of probation where an eighteen-year-old male had sexual intercourse with a fourteen-year-old female finding no abuse of discretion by the district court because such action violated § 14–3–105.

[¶ 24] Likewise, this court has upheld the conviction of defendants under § 14–3–105 and further defined what actions constitute "immoral," "immodest," and "indecent" conduct. *Britt v. State*, 752 P.2d 426 (holding a person of ordinary intelligence would know that a forty-two-year-old male adult rubbing and grabbing penises of thirteen- and fourteen-year-old boys is clearly conduct which is forbidden); *Schwenke v. State*, 768 P.2d 1031 (Wyo.1989) (affirming the indecent liberties conviction of an adult man who had anal intercourse with his minor son); and *Auclair v. State*, 660 P.2d 1156 (Wyo.1983) (upholding the conviction of an adult male involved in an incestuous relationship with his thirteen-year-old daughter).

[¶ 25] In *Griego v. State*, 761 P.2d at 976, wherein an adult male fondled and sucked a fourteen-year-old female's breast and "dry-humped" her, we noted:

> In *Sorenson*, supra, § 14–3–105 was applied to conduct which was substantially identical to appellant's conduct in this case (breast fondling). Given this application of the statute, ordinary people would understand that appellant's conduct fell within the statute.

In tandem, in *Ochoa v. State*, 848 P.2d at 1363, involving an adult male having sexual intercourse with female minors wherein nolo contendere pleas were entered, we said:

> Our indecent liberties statute clearly proscribes the conduct, sexual intercourse with a minor, engaged in by Ochoa. We have repeatedly interpreted this statute to apply where an adult engaged in sexual intercourse with a minor. *Griego*, 761 P.2d at 976, citing *McArtor v. State*, 699

---

**3.** *Sorenson v. State* involved a situation wherein an adult male groped a twelve-year-old female's breast over her clothing and unbuttoned her blouse. The *Montoya v. State* case included sexu-

al intrusion by an adult with a minor female, while *McArtor v. State* concerned an adult male having sexual intercourse with a sixteen-year-old female.

P.2d 288 (Wyo.1985); *Auclair v. State,* 660 P.2d 1156 (Wyo.1983); *Ketcham v. State,* 618 P.2d 1356 (Wyo.1980). As we said in *Griego,* "[t]hese decisions demonstrate that § 14–3–105 applies, without question, to certain activities." 761 P.2d at 976. One of those activities is sexual intercourse with a minor. We hold that our indecent liberties statute is not unconstitutionally vague as applied to Mr. Ochoa's actions.

[¶ 26] We also pointed out in *Lovato v. State,* 901 P.2d at 413, involving multiple acts of sodomy by an adult male with minor males:

Appellant also suggests that he could not have known that having anal intercourse with a minor amounted to taking indecent liberties with a child. Appellant's argument borders on being ridiculous. This Court has stated that the indecent liberties statute applies "where an adult engage[s] in sexual intercourse with a minor." *Ochoa,* 848 P.2d at 1363. We do not see any difference between the cases where an adult has vaginal intercourse with a child and the cases where an adult has anal intercourse with a child. Sexual intercourse is defined as being any "sexual connection" between humans. *Webster's Third New International Dictionary* 2082 (1961). A person of ordinary intelligence would know that anal intercourse between an adult and a child is unquestionably immoral, immodest, and indecent behavior and is proscribed under the statute. See *Schwenke v. State,* 768 P.2d 1031 (Wyo. 1989) (affirming the indecent liberties conviction of a man who had anal intercourse with his son).

In *Pierson v. State,* 956 P.2d at 1124, where a married adult male and a sixteen year-old female developed a relationship that escalated from fondling into sexual intercourse and the eventual void marriage of the couple, we remarked:

The purpose of the indecent liberties statute is to protect the morals of a child, which expressly includes a person under the age of eighteen. *Derksen v. State,* 845 P.2d 1383, 1387 (Wyo.1993) (quoting *Sorenson,* 604 P.2d at 1035). Pierson admits that an adult's conduct in engaging in sex-

ual intercourse with a sixteen year old can be indecent, immodest and immoral. Under the facts as presented by the State, Pierson had fair notice that a sexual relationship with an inexperienced sixteen-year-old child, consummated in deliberate disregard of her parents' interdiction and while still legally married to another, is prohibited conduct in the state of Wyoming. There is no evidence that the statute was enforced in a discriminatory manner. Therefore, Pierson's constitutional challenge must fail.

[¶ 27] Still in *Schmidt v. State,* at ¶ 28, regarding actions of an adult male masturbating in front of eleven-year-old female, we said:

Appellant revisits several constitutional challenges to the indecent liberties statute. We will limit our discussion of that issue to a reference to some of our cases wherein we have held that the statute is not void for vagueness or otherwise unconstitutional. *Pierson v. State,* 956 P.2d 1119, 1123–24 (Wyo.1998); *Moore v. State,* 912 P.2d 1113, 1116 (Wyo.1996); *Lovato v. State,* 901 P.2d 408, 412–13 (Wyo.1995); *Ochoa v. State,* 848 P.2d 1359, 1362–64 (Wyo.1993). *Schmidt* offers us nothing new or otherwise persuasive that would cause us to reconsider or reverse our holdings as to the constitutionality of that statute.

In *Moore v. State,* 912 P.2d 1113, involving a thirty-year-old male having sexual intercourse with a sixteen-year-old female, we also upheld the constitutionality of § 14–3–105 despite an attempted constitutional facial religious-based challenge and the alleged consent of the victim.

[¶ 28] Finally we find our decision in *Misenheimer v. State,* 2001 WY 65, 27 P.3d 273, concerning a seventeen-year-old male having sexual intercourse with a thirteen-year-old female, particularly instructive. Therein, we concluded:

We agree with the district court's assessment that there is no reason a reasonably intelligent seventeen-year-old could not determine that sexual intercourse with a thirteen-year-old was conduct which is forbidden under § 14–3–105. An ordinary, reasonably intelligent seventeen-year-old

could determine that supplying a thirteen-year-old child with alcohol prior to engaging in sexual acts with her was forbidden conduct. A vague statute lacks ascertainable standards for establishing guilt. We have previously held that § 14–3–105 is not facially vague as to the types of conduct that are proscribed. *Pierson*, 956 P.2d at 1123–24; *Sorenson*, 604 P.2d at 1034–35. The indecent liberties statute is not vague as applied to the facts of Appellant's case, and the district court's decision on this issue is affirmed.

*Misenheimer*, at ¶ 15 (footnote omitted). This court went further stating at ¶¶ 12–14:

The indecent liberties statute prohibits "any **person** [from] knowingly taking immodest, immoral or indecent liberties with any child[.]" § 14–3–105(a) (emphasis added). The crux of the issue then is what did the legislature mean by "person." The term is not defined within the indecent liberties statute. The ordinary meaning of the word is very broad: a human being or individual. Merriam–Webster's Collegiate Dictionary 867 10th Ed. (1998); Black's Law Dictionary 1142 6th Ed. (1990). The scope of the phrase cannot be clearer: "Person" means any human being or individual without limitation by age or other factors. The policy behind § 14–3–105 is to protect children from exploitation; we cannot imagine that the legislature intended to withdraw the protection of the law from the victim in order to protect the offender. *In re Hildebrant*, 216 Mich.App. 384, 548 N.W.2d 715, 716 (1996). We find the reply to a similar argument by the Appellate Court of Connecticut succinctly on point:

The defendant first claims that he had no notice that the statute applies to the actions of one who is himself a minor. We cannot agree. Section 53–21 provides that "any person" who engages in the proscribed conduct is in violation of the statute. Statutory language clear on its face will be construed for what it says. *State v. Roque*, 190 Conn. 143, 150, 460 A.2d 26 (1983). The statute does not limit the definition of "any person" to adults. The legislature was free to, and did not, define violators in terms

of age. . . . The defendant cannot contest the fact that he is in the class of "any person," nor is there any merit to his claim that he is the first juvenile to fall within the statute's purview. See *In re Michael B.*, 41 Conn.Supp. 229, 566 A.2d 446 (1989).

The defendant argues that, as a matter of policy, § 53–21 should not apply to violators who are minors since they are themselves within the class of children protected by the statute. Despite the defendant's assertion that interpreting § 53–21 to include acts between children would criminalize instances of "playing doctor," we will not interpret the law to give minors license to sexually molest other minors. It is contrary to the law's intent, and to common sense, to establish a policy that withdraws the law's protection from the victim in order to protect the violator, even one who is a minor.

*In re John C.*, 20 Conn.App. 694, 569 A.2d 1154, 1156 (1990). The exclusion of minors from the prohibitions of the indecent liberties statute would undercut the purpose behind the statute: the protection of children. It is a sad reality that minors are capable of, and do commit, crimes just as adults do.

An increasing number of reported sex cases involving children have demonstrated that the problem of sexual molestation is not simply confined to adults abusing children, but extends to adolescent and preadolescent minors committing sexual acts upon even younger minors.

Susan M. Kole, Annotation, *Statute Protecting Minors in a Specified Age Range from Rape or Other Sexual Activity as Applicable to Defendant Minor within Protected Age Group*, 18 A.L.R.5th 856, 866, 1994 WL 906445 (1994). Statutes must be read in a manner that effectuates the legislature's intent and the inclusion of minors within the meaning of the phrase "any person" accomplishes that by ensuring the protection of children from sexual abuse inflicted by not only adults but also by their peers. The phrase "any person"

is sufficiently clear to put an individual of any age on sufficient notice that their conduct may come within the prohibitions of the statute.

Furthermore, the inclusion of minors within the meaning of the word "persons" in § 14–3–105 is consistent with the overall statutory framework established by the legislature. As noted above, the indecent liberties statute is a part of the statutory scheme designed to protect people from sexual exploitation. The assault statutes, §§ 6–2–302 through 6–2–304, use the word "actor" when referring to the perpetrator. That word is defined within the statutes as meaning, "the *person* accused of criminal assault [.]" Wyo. Stat. Ann. § 6–2–301(a)(i) (LexisNexis 2001) (emphasis added). Appellant acknowledges that minors are subject to the prohibitions established in the sexual assault statutes at §§ 6–2–302 through 6–2–304. Consistency argues for the application of the same meaning to a word that is included in related statutes.

Appellant also argues that he could not have reasonably known that a sexual relationship between a seventeen-year-old and a thirteen-year-old was prohibited by § 14–3–105. In support of his position, Appellant points out that children are reaching sexual maturity and are engaging in sexual conduct at earlier ages. The mere fact that children are reaching sexual maturity at an earlier age is, however, irrelevant to the issue of whether Appellant's actions were in violation of § 14–3–105. The attainment of sexual maturity is not a license for the sexual exploitation of children.[4]

[¶ 29] In summary, there have been numerous Wyoming cases that have held § 14–3–105 prohibits sexual intercourse between adult males and minor females giving Giles proper notice that the acts he took with the victim were illegal. Arguably, the additional case authority upholding convictions under the statute for acts falling short of sexual intercourse with a minor also put Giles on proper notice that his acts were illegal. Even presuming that Giles could be treated as a minor, although he had turned 18 just days before the event in question, our holding in the *Misenheimer* case squarely put Giles on notice that his acts were illegal under the statute. *Misenheimer* further clarified that the changing moral fiber of society is not a valid defense.

[¶ 30] Giles properly acknowledges that we have previously held that indecent liberties is not a lesser-included offense of Wyoming's sexual assault statutes. *Derksen v. State*, 845 P.2d 1383. Giles then points out that Wyoming's third degree sexual assault statute, Wyo. Stat. Ann. § 6–2–304 (LexisNexis 2003), establishes an age of consent of sixteen years of age and mandates that the defendant be at least four years older than the victim while Wyo. Stat. Ann. § 14–3–105 does not include these criteria.[5] Therefore, Giles argues that this statutory scheme leads one to believe that because consensual sex with a person age sixteen or older or be-

4. In a specially concurring opinion in *Misenheimer*, the potential for absurd results in future cases was discussed. It was suggested that the legislature re-examine this issue to decide: 1) whether it intended the result in the scenario cited or the case at hand; 2) whether, given the comprehensive sexual assault statutory scheme, the indecent liberties statute should be applied only when the perpetrator is an adult and/or four years older than the victim; and 3) whether there were some types of conduct that should be considered for misdemeanor treatment. *Misenheimer*, at ¶ 23 (Lehman, C.J., specially concurring). Nevertheless, the legislature has failed to address these issues to date, leaving these dilemmas outstanding. Again, we would encourage the legislature to address such issues.

5. Wyo. Stat. Ann. § 6–2–304 (LexisNexis 2003) provides:

(a) An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree:

(i) The actor is at least four (4) years older than the victim and inflicts sexual intrusion on a victim under the age of sixteen (16) years; or

(ii) The actor is an adult and subjects a victim under the age of fourteen (14) years to sexual contact without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim;

(iii) The actor subjects a victim to sexual contact under any of the circumstances of W.S. 6–2–302(a)(i) through (iv) or 6–2–303(a)(i) through (vi) without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim.

tween persons within four years of age is legal under § 6-2-304, such acts cannot be considered immoral, immodest, or indecent under § 14-3-105. However, in *Misenheimer*, at ¶¶ 10-11 (footnotes omitted), in recognizing the distinctions between Wyoming's sexual assault statutes and its indecency statute, we clearly remarked:

> A review of these statutes readily indicates that the legislature intended them to operate as an integrated whole. In fact, the statutory scheme evidences a hierarchical framework through a series of conditional clauses. At the top of this hierarchy is first degree sexual assault, which, broadly speaking, prohibits forcible sexual contact. Second degree sexual assault may be charged only "under circumstances not constituting sexual assault in the first degree." Similarly, as one proceeds down the hierarchy, third degree sexual assault cannot be charged under circumstances constituting first or second degree sexual assault. The hierarchical nature of the statutory scheme is a sign of the seriousness attached to each crime and is reflected in the penalties imposed by the legislature on each.

> The sexual assault statutes protect all persons. The indecent liberties statute, on the other hand, only offers protection to those less than eighteen years of age. § 14-3-105(c). It is also limited in that it is applicable only in those circumstances not constituting first, second or third degree sexual assault. In other words, § 14-3-105 criminalizes activities that are otherwise permissible between consenting adults when one of the parties is under the age of eighteen years.

Therefore, we strongly disagree with Giles' espoused argument.

[¶ 31] Finally, Giles offers an argument that other states that had similar statutes to § 14-3-105 have now repealed them in favor of more comprehensive and specific statutes.

However, such an argument is predicated upon mere speculation and conjecture, as Giles does not identify with appropriate authority the specific reasons employed by those state legislatures. Accordingly, we hold that Wyo. Stat. Ann. § 14-3-105 is not vague as applied to the facts of this case.

### Jury Instructions

[¶ 32] As noted above, Giles' counsel proposed three jury instructions based on our holding in *Pierson v. State*, 956 P.2d 1119, which the district court refused. The first proposed instruction stated: "Consent is not a complete defense to the charge of 'immodest, immoral or indecent liberties,' however, it is a material factor to be considered in determining whether the 'liberties' taken were 'indecent' or 'immoral'." The second proposed instruction stated: "In determining whether the conduct was 'indecent liberties,' you should consider the totality of the circumstances." The last proposed instruction stated:

> The consent given must be considered in light of the facts relevant to the minor's ability to give an informed consent and the Defendant's actions to secure the consent. Such circumstances include, but are not limited to, the victim's relative maturity; experience; whether the minor is emancipated; the extent of parental involvement in the minor's decisions; and evidence of the Defendant's manipulation or coercion of the minor.

[¶ 33] In addition, Giles' attorney objected to jury instructions numbered 6 and 8 submitted by the State. These instructions were accepted by the district court and given to the jury. As indicated earlier, the first such instruction advised the jury that words used within the jury instructions should be taken in their ordinary and usual sense and then provided definitions for the words "immoral," "immodest," and "indecent."[6] The second subject instruction stated:

> Additionally, you may refer to the following definitions in conjunction with these instructions:
> "Immoral" means not moral: inconsistent with purity or good morals: contrary to con-

---

6. The jury in this case was given jury instructions that defined the terms immodest, immoral, and indecent as follows:

> As used in these instructions, words and phrases should be taken in their ordinary and usual sense.

Consent is not a defense to the charge of "immodest, immoral or indecent liberties" where the victim is less than sixteen (16) years of age; a person under the age of sixteen (16) years cannot consent to sexual intercourse.

[¶ 34] Giles contends that the note the jury submitted to the district court during deliberations reveals that the jury was concerned with the consent issue. Moreover, Giles argues that the facts in this case demonstrate that he did not manipulate the situation leading to the charge against him; he did not coerce MB; MB actually seemed at times to take the lead; and her consent and all of the surrounding circumstances must be considered in determining whether Giles took "immodest, immoral or indecent" liberties with MB. Giles, therefore, concludes that the trial court erred by not providing the jury with guidance as to how to resolve the significance of MB's consent to intercourse and the surrounding circumstances that existed. Giles claims that this error allowed the jury to become confused, or at least not appropriately guided in its deliberations, which led to Giles' conviction.

[¶ 35] Giles bases the bulk of his argument on our holding in *Pierson*. In that case, Pierson and CG, the minor involved, met when CG was fifteen and Pierson was thirty-six and married. While CG was still fifteen, Pierson told her that he was "falling in love" with her, and a physical relationship gradually grew. The couple then began to discuss the possibility of marriage. At the age of sixteen, after being forbidden contact with Pierson, CG had sexual intercourse with Pierson. Additional sexual interludes followed. Immediately upon CG's parents becoming aware of the sexual relationship between her and Pierson, CG and her family moved to Montana. Pierson and CG then absconded together and married in Oregon when CG was seventeen. Sometime later,

the couple began residing in New Jersey with Pierson's relatives. Eventually, Pierson was charged with taking indecent liberties with CG. During the trial, CG testified that through the entire relationship she was dominated by and under the control of Pierson. In contrast, Pierson introduced the testimony of several witnesses indicating CG invited Pierson's attentions and appeared to be a mature and equal participant during all times they were together. *Pierson*, at 1121–23.

[¶ 36] Pierson was convicted of one count of indecent liberties with a minor after a three-day trial. On appeal, Pierson asserted that the instructions given to the jury prevented consideration of the facts essential to his defense. Pierson argued that because a sixteen year old may legally consent to sexual intercourse under § 6–2–304 (third degree sexual assault), CG's consent had a direct bearing on the relative "indecency" of their activity. *Pierson*, at 1123–24.

[¶ 37] In addressing this claim, the *Pierson* court noted that the legislature's express protection of minors under the age of eighteen from indecent liberties makes it apparent that the legislature did not intend to cast a minor of sixteen or seventeen years of age to the mercy of society at large. Thus, we determined that the legal age of consent of sixteen years of age designated by § 6–2–304 did not resolve the question whether the victim, in fact, gave informed consent to the conduct charged, nor did it resolve the question whether the conduct, even with consent, was indecent or immoral. *Pierson*, at 1125.

[¶ 38] This court in agreeing with Pierson's asserted position also stated:

In defining the term "indecent liberties," we rely on the "common sense of society." *Sorenson*, 604 P.2d at 1034. As the members of society who will exercise that common sense, the jury must be allowed to consider the totality of the circumstances relating to the culpability of the defen-

science or moral law: in conflict with general or traditionally held moral principles.

"Immodest" means lacking or deficient in modesty: deficient in sexual modesty: not to conform to the sexual mores of a particular time or place.

"Indecent" means not decent: not conforming to generally accepted standards of morali-

ty: tending toward or being in fact something generally viewed as morally indelicate or improper or offensive: being or tending to be obscene.

The Wyoming Criminal Pattern Jury Instructions (Rv'd 1996) suggests the jury be instructed in just this manner.

dant's conduct. This includes whether the conduct was consensual in those cases where the minor was legally old enough to give an informed consent under Wyo. Stat. § 6–2–304. However, the "consent" must also be considered in light of the facts relevant to the victim's ability, in fact, to give an informed consent and the defendant's actions to secure the consent of the minor. Such circumstances include, but are not limited to, the victim's relative maturity; experience; whether the minor is emancipated; the extent of parental involvement in the minor's decisions; and evidence of the defendant's manipulation or coercion of the minor.

*Pierson,* at 1125–26.

[¶ 39] Since the issuance of our *Pierson* opinion, this court has continued to recognize the proposition that juries must employ the "common sense of society" in defining the term "indecent liberties." In *Chapman v. State,* at ¶¶ 27–28, Chapman contended that the jury was not properly instructed on the elements of the offense of indecent liberties with a minor. Specifically, relying on *Pierson,* Chapman argued that the offense of indecent liberties required more than "mere" sexual contact with someone under eighteen and that the jury should have been instructed on this claimed essential element. In rebuffing Chapman's argument, this court indicated that any claim by Chapman that the jury should have been instructed about the circumstances surrounding "consent" was not well founded because Chapman's thirteen-year-old victim was a minor who was not legally old enough to give informed consent, under § 6–2–304, to the almost fifty-year-old Chapman. Nevertheless, this court recognized that the jury needed to be able to consider the totality of circumstances and use its common sense in reaching its decision on the indecent liberties charges. We stated:

> Second, consistent with *Pierson,* we find nothing in the district court's instructions that prevented the jury from considering the totality of the circumstances or from using its common sense in reaching its decision on the indecent liberties charges. Chapman has not demonstrated that the

jury was improperly instructed on the offense of indecent liberties, and we cannot find counsel ineffective on this ground.

*Chapman v. State,* at ¶ 28.

[¶ 40] In addition, in the case of *Schmidt v. State,* we upheld the trial court's instruction to the jury of the terms "immodest, immoral, or indecent liberties" as: "Actions which are such as the common sense of society would regard as indecent and improper and a person of ordinary intelligence can weigh contemplated conduct against prohibition" coupled with an instruction dealing with intent which stated, in part: "The jury may consider the circumstances surrounding the act, the doing of the act itself, the manner in which it was done and the means used." *Schmidt,* at ¶¶ 22–25. In fact, this court in *Burton v. State,* at ¶¶ 24–25, again recognized that:

> The trial court instructed the jury on the elements of the crime of taking indecent liberties with a child in accordance with § 14–3–105(a). Burton suggests that the court should have defined the phrase "immodest, immoral or indecent liberties" for the jury. This court has, however, repeatedly refused to precisely define the phrase "immodest, immoral or indecent liberties." See e.g., *Chapman v. State,* 2001 WY 25, ¶ 28, 18 P.3d 1164, ¶ 28 (Wyo.2001); *Sorenson v. State,* 604 P.2d 1031, 1034–35 (Wyo.1979). Instead, the jury is allowed to apply its common sense by looking at the totality of the circumstances pertaining to the culpability of the accused's conduct. *Chapman,* at ¶ 28.
>
> In this case, the trial court properly instructed the jury on the elements of taking indecent liberties with a minor, without providing a definition of the phrase "immodest, immoral or indecent liberties." It is, however, clear that the indecent liberties statute punishes inappropriate sexual conduct with children. *Chapman,* at ¶ 28.

[¶ 41] In *Pierson,* this court went further to express that our holding in no way vitiated our previous determinations that the consent of a minor of at least sixteen years of age was not a complete defense to the charge of

taking indecent liberties. Specifically, we stated:

> In approving Jury Instruction No. 9, the district court expressly relied on the holding in *McArtor*, 699 P.2d 288, where after a trial to the court, McArtor was convicted of one count of taking indecent liberties with a minor. *Id.* at 289. On appeal, McArtor claimed that the sixteen-year-old victim's admission that sexual intercourse was consensual was a complete defense to the charge. He argued that because the victim could consent under Wyo. Stat. § 6-2-304 (statutory rape/sexual assault), the sexual assault provision was a "specific" statute which impliedly repealed or controlled the application of the "general" indecent liberties statute. *McArtor*, 699 P.2d at 294.
>
> Holding that the indecent liberties statute was not controlled by the statutory rape provision, this court specifically noted that McArtor not only engaged in sexual intercourse, but did so under circumstances specifically addressed within the indecent liberties statute in effect at that time:
>
>> Beyond that, it is not immediately discernible as to which of the two statutes is more specific. Sexual intrusion or penetration is an element of § 6-2-304 (§ 6-63.5) but is not a necessary element of § 14-3-105 (§ 14-28). Although the latter statute (at the time of the incident) is not limited to parents, guardians and custodians, the fact that they are specifically mentioned would indicate an intention to place a special onus on those with supervisory authority over minors—as appellant had over the victim in this case.
>
> *McArtor*, 699 P.2d at 293. Thus, because the indecent liberties statute encompassed conduct outside the scope of Wyo. Stat. § 6-2-304, and one was no more "specific" than the other, we concluded that Wyo. Stat. § 14-3-105 was not controlled by Wyo. Stat. § 6-2-304.

*Pierson v. State*, at 1126 (footnote omitted).

[¶ 42] In *Pierson v. State*, at 1126-27, we also noted:

> Jury instructions are written with the particular facts and theories of each case in mind. *Miller v. State*, 904 P.2d 344, 348 (Wyo.1995) (quoting *Gore v. State*, 627 P.2d 1384, 1388-89 (Wyo.1981)). Instructions to the jury are designed to inform the jury about the applicable law so that the jury may apply that law to its own findings with respect to the material facts. *Compton v. State*, 931 P.2d 936, 939 (Wyo. 1997); *Brown v. State*, 817 P.2d 429, 439 (Wyo.1991). A jury instruction must leave no doubt as to under what circumstances the crime could be found to have been committed in the particular case. *Compton*, 931 P.2d at 940; *Miller*, 904 P.2d at 348 (quoting *Graham v. United States*, 187 F.2d 87, 90 (D.C.Cir.1950), cert. denied, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951)). We must therefore determine whether the jury instructions left a doubt as to the circumstances under which Pierson could be found to have committed the crime. Review of the trial transcript and the jury instructions as a whole reveals that the jury was not properly instructed in this case.

*In accord see Schmidt v. State*, at ¶ 23 (citing *Metzger v. State*, 4 P.3d 901, 908 (Wyo.2000)).

[¶ 43] Similar to our conclusion in *Pierson*, we hold that the jury instructions given by the district court left doubt as to the circumstances under which Giles could be found to have committed the crime of indecent liberties with a child. While we do not find that the district court erred in providing the jury with the particular definitions of "immoral," "immodest," or "indecent" as expressed, the jury was not appropriately instructed to consider the totality of circumstances in determining whether or not Giles' actions fell within these categories as defined. Given our well-established guidance that a jury must use its common sense in making such a determination, it is imperative that the jury be able to consider all the facts in each particular case. Requesting that the jury use its common sense in determining if a defendant's actions amount to indecent liberties with a child in a vacuum without review of the totality of circumstances makes little sense.

[¶ 44] Accordingly, by way of enlightenment to the parties involved in this case and to other members of the bar faced with an action involving a charge of immodest, immoral, or indecent liberties with a victim younger than sixteen years of age in violation of § 14–3–105, the following jury instruction shall be given:

The law in Wyoming assumes that a victim under the age of sixteen (16) does not have the ability to consent to a sexual act. However, you are instructed that you may examine the totality of the circumstances surrounding the alleged conduct, which may include the acts of the victim and the acts of the defendant to make the determination if the conduct was immodest, immoral, or indecent.

[¶ 45] Distinction must explicitly be made from a situation involving an alleged victim younger than sixteen years of age as opposed to that circumstance embodying an alleged victim of sixteen years of age or older. In the latter occasion, we previously held in *Pierson,* and continue to support such decision, that a jury must look at the totality of circumstances to determine both 1) whether the victim, in fact, gave informed consent to the conduct charged, and 2) whether the conduct, even with consent, was immodest, immoral, or indecent. *Pierson v. State,* at 1125.

[¶ 46] Lastly, in either instance listed above, we recognize that the terms "immodest, immoral, or indecent" as utilized within § 14–3–105 are stated in the disjunctive, representing a choice among alternatives. Therefore, we clarify that a jury must find that a defendant acted in at least one of the enumerated manners before concluding a defendant is guilty of violating § 14–3–105. As such, a special jury verdict form should be presented to a jury deliberating such issues to clearly indicate which, if any, of these alternative detailed acts occurred under the evidence presented. The use of such a special jury verdict form will leave no doubt as to what circumstances the jury found the crime to have been committed in each particular case. Additionally, the use of such a form will better ensure that the jury is properly instructed as to the applicable law, given

the actual issues raised by the evidence, and will better assist the parties and this court should appellate proceedings prove necessary. *Duckett v. State,* 966 P.2d 941, 943–44 (Wyo.1998); *Brett v. State,* 961 P.2d 385, 389 (Wyo.1998); *Baier v. State,* 891 P.2d 754, 756 (Wyo.1995); *Hatheway v. State,* 623 P.2d 741, 743 (Wyo.1981).

### Sufficiency of the Evidence

[¶ 47] Giles argues that the evidence is insufficient to sustain his conviction. However, after a complete review of the record, we find the evidence sufficient to support the jury's verdict. Not only did Giles admit to having sexual intercourse with MB, the group also used illegal drugs before Giles and MB retired to the bedroom. Given these facts, combined with the other facts noted above, we conclude that the jury's verdict was supported by the evidence.

### CONCLUSION

[¶ 48] For the foregoing reasons, the conviction of Giles for immodest, immoral, or indecent liberties with a child pursuant to Wyo. Stat. Ann. § 14–3–105 is reversed, and this matter is remanded to the district court for further proceedings consistent with this opinion.

VOIGT, Justice, specially concurring.

[¶ 49] I agree that this appellant's conviction must be reversed. I write separately because I do not believe Wyo. Stat. Ann. § 14–3–105 (LexisNexis 2003) is constitutional. The statute is too vague to give meaningful notice of what conduct it proscribes, it is too susceptible to arbitrary prosecution, and it leaves it up to individual juries to decide what is, and what is not, a crime. *See* Lori L. Brand, Casenote, *Criminal Law—Wyoming's Indecent Liberties Statute—Victim Consent is Now a "Relevant Fact for Jury Deliberation;" Did Pierson Put a Bandage on Wyoming's Criminal Code Bullet Wound? Pierson v. State, 956 P.2d 1119 (Wyo.1998),* XXXIV Land & Water L.Rev. 187 (1999).

[¶ 50] The statute provides, in pertinent part:

(a) Except under circumstance[s] constituting sexual assault in the first, second or third degree as defined by W.S. 6–2–302 through 6–2–304, any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony. Except as provided by subsection (b) of this section, a person convicted under this section shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both.

Wyo. Stat. Ann. § 14–3–105(a). Subsection (c) defines "child" as "a person under the age of eighteen (18) years." Wyo. Stat. Ann. § 14–3–105(c). In addition, the jury was instructed in this case, as many juries before have been instructed, that "immoral" means "not moral," "immodest" means "not modest," and "indecent" means "not decent."

[¶ 51] The statute's reference to first-, second- and third-degree sexual assault only indicates what conduct is *not* prohibited by its terms. Sexual intrusion, for instance, is not covered by the indecent liberties statute [7] in the following circumstances, because it is forbidden by one of the other sexual assault statutes:

1. First-degree if by force. Wyo. Stat. Ann. § 6–2–302(a)(i) (LexisNexis 2003).

2. First-degree if by threat of death. Wyo. Stat. Ann. § 6–2–302(a)(ii).

3. First-degree if the victim is physically helpless. Wyo. Stat. Ann. § 6–2–302(a)(iii).

4. First-degree if the victim is mentally helpless. Wyo. Stat. Ann. § 6–2–302(a)(iv).

5. Second-degree if by future threats. Wyo. Stat. Ann. § 6–2–303(a)(i) (LexisNexis 2003).

6. Second-degree if by preventing resistance. Wyo. Stat. Ann. § 6–2–303(a)(ii).

7. Second-degree if by administering a substance. Wyo. Stat. Ann. § 6–2–303(a)(iii).

8. Second-degree if erroneously thought spouse. Wyo. Stat. Ann. § 6–2–303(a)(iv).

9. Second-degree if the victim is less than twelve and the actor is four years older. Wyo. Stat. Ann. § 6–2–303(a)(v).

10. Second-degree if by a position of authority. Wyo. Stat. Ann. § 6–2–303(a)(vi).

11. Second-degree if during medical diagnosis or treatment. Wyo. Stat. Ann. § 6–2–303(a)(vii).

12. Third-degree if the victim is less than sixteen and the actor is four years older. Wyo. Stat. Ann. § 6–2–304(a)(i) (LexisNexis 2003).

[¶ 52] Because all of this conduct is statutorily omitted from coverage by the indecent liberties statute, we (and the jury) are left to speculate what conduct is not omitted, and, by implication, is included. In the context of the present case, the last-numbered circumstance is most relevant. It can be third-degree sexual assault for an eighteen-year-old who is four years older than the victim to have consensual sexual intercourse with a fourteen-year-old, but it cannot be third-degree sexual assault for an eighteen-year-old who is less than four years older than the victim to have consensual sexual intercourse with a fourteen-year-old. The question is whether the actor in the latter situation may be found guilty of indecent liberties. The answer is "yes," if a jury decides his conduct was not modest, or not moral, or not decent.

[¶ 53] Similarly, "sexual contact" is defined as "touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or of the clothing covering the immediate area of the victim's or actor's intimate parts[.]" Wyo. Stat. Ann. § 6–2–301(a)(vi) (LexisNexis 2003). Sexual contact is not forbidden by the indecent liberties statutes if it constitutes

---

7. For simplicity's sake, I will refer to this statutory crime as "indecent liberties," although the majority opinion makes it clear that there are actually three separate crimes: "immodest liberties," "immoral liberties," and "indecent liberties."

first-, second- or third-degree sexual assault, which include the following circumstances:

1. Second-degree if serious bodily injury under any first- or second-degree circumstance. Wyo. Stat. Ann. § 6–2–303(b).

2. Third-degree if the victim is less than fourteen and the actor is an adult, with no sexual intrusion and no serious bodily injury. Wyo. Stat. Ann. § 6–2–304(a)(ii).

3. Third-degree if under any first- or second-degree circumstance, with no sexual intrusion and no serious bodily injury. Wyo. Stat. Ann. § 6–2–304(a)(iii).

4. Sexual battery if not first-, second- or third-degree sexual assault and not indecent liberties.[8] Wyo. Stat. Ann. § 6–2–313(a) (LexisNexis 2003).

[¶ 54] Once again, none of this conduct, by statutory limitation, constitutes indecent liberties, leaving some doubt as to when sexual contact may be indecent liberties. For example, it is third-degree sexual assault for an adult (someone eighteen or older) to have sexual contact with a victim who is less than fourteen, so that conduct cannot be charged as indecent liberties. A person caring to measure his future conduct against these statutes could then presume that it is not third-degree sexual assault to have sexual contact with a victim who is fourteen. But is it indecent liberties? Similarly, it is not third-degree sexual assault for a seventeen-year-old to have sexual contact with a victim who is less than fourteen. But is it indecent liberties? The answer to both of these questions is "yes," if a jury decides the conduct was not modest, not moral, or not decent.

[¶ 55] The problem with this statutory scheme is that it is the legislature who has defined the crimes in the sexual assault statutes, while it is left up to individual juries to define the crimes of immodest, immoral or indecent liberties. The answer could differ from county to county, from town to town, from jury to jury. Some examples: Consensual sexual intercourse between an eleven-year-old girl and a fourteen-year-old boy is not first-, second- or third-degree sexual assault. Is it indecent liberties? It is if the jury decides it is. Consensual sexual intercourse between a fifteen-year-old boy and an eighteen-year-old girl is not first-, second- or third-degree sexual assault. Is it indecent liberties? It is if the jury decides it is. Consensual sexual intercourse between a sixteen-year-old girl and a thirty-year-old man is not first-, second- or third-degree sexual assault. Is it indecent liberties? It is if the jury decides it is. Consensual sexual contact between a fourteen-year-old boy and a fourteen-year-old girl is not first-, second- or third-degree sexual assault. Is it indecent liberties? It is if the jury decides it is.

[¶ 56] Fundamentally, there are three major flaws with the crime of indecent liberties as it exists in the Wyoming statutes. First, the line between acceptable and unacceptable behavior is indiscernible until the jury returns with a verdict. Second, it is misleading to have the age of consent be sixteen in the third-degree sexual assault statute, but eighteen in the indecent liberties statute. On page 134 of Volume 2 of the Wyoming Statutes, it is legal for a twenty-year-old man to have sexual intercourse with a seventeen-year-old girl. Wyo. Stat. Ann. § 6–2–304. On page 404 of Volume 3 of the Wyoming Statutes, the same conduct may be found illegal by a jury. Wyo. Stat. Ann. § 14–3–105. How can it be that consensual sexual intercourse with a sixteen-year-old or seventeen-year-old violates community standards of modesty, morality, or decency when the legislature, the official declarant of public policy, has declared that such is perfectly legal?

[¶ 57] The third major flaw in the indecent liberties statute was highlighted by the jury in the instant case when it sent a note to the judge asking if the appellant's conduct had to be found immodest *and* immoral *and* indecent. The majority rightfully states that these options are stated in the disjunctive in the statute, so they must be charged, proven, and found separately. In the future, a special verdict form will allow the jury to specify what crime was committed, but it will not solve the key problem. It is simply too much to ask of a person that he be able to predict whether the twelve members of a particular

---

8. The sexual battery statute, Wyo. Stat. Ann. § 6–2–313 opens another question: what is not covered by the other statutes that is left to be charged as sexual battery?

jury sometime in the future will determine that his particular conduct was not sufficiently modest or not sufficiently moral or not sufficiently decent to meet community standards.

[¶ 58] Either "immodest," "immoral," and "indecent" all mean the same thing, or they mean different things. If the majority is correct, and I believe it is, that the words are used in the disjunctive and must be considered separately by the jury, then they must also be charged separately and proven separately. Perhaps this most directly reveals the vagueness in the statute. What facts will the prosecutor have to consider to decide whether certain conduct is immoral as opposed to immodest or indecent? What standard will the prosecutor apply in deciding how to charge?

[¶ 59] Admittedly, the particular facts of this case, especially the age of the "victim," do not lend themselves well to an "as applied" challenge to the constitutionality of the statute. Further, the doctrine of *stare decisis* demands respect. But the underlying principle of our system of justice is justice. For too long, this Court has struggled to find the indecent liberties statute constitutional because it protects children when, in truth, it simply has no measurable standards. It is a well-settled rule of law that penal statutes are to be construed strictly and are not to be extended by inference or implication to cases not clearly covered by their language. *Olsen v. State*, 2003 WY 46, ¶ 168, 67 P.3d 536, 596 (Wyo.2003); *Keats v. State*, 2003 WY 19, ¶ 26, 64 P.3d 104, 112 (Wyo.2003); *Horn v. State*, 556 P.2d 925, 927 (Wyo.1976). We have violated this principle in construing the indecent liberties statute:

> "True, what shall be regarded as 'immodest, immoral and indecent liberties' is not specified with particularity, but that is not necessary. The indelicacy of the subject forbids it. The common sense of the community, as well as the sense of decency, propriety, and morality which people generally entertain, is sufficient to apply the statute to each particular case, and point out unmistakably what particular conduct is rendered criminal by it. *State v. Millard*, 18 Vt. 574, 46 Am.Dec. 170. * * *"
> *Dekelt v. People*, 44 Colo. 525, 99 P. 330, 331–332 (1909).

*Sorenson v. State*, 604 P.2d 1031, 1035 (Wyo. 1979). In what other instance have we said it is appropriate that the elements of a crime not be specified with particularity? How does the "indelicacy" of the subject trump due process? Where else can the common sense of the community decide, after the fact, on a case-by-case basis, what conduct is criminal? To continue:

> " * * * Due process does not require that this statute, with its beneficent purpose, spell out in exact words what constitutes the conduct made punishable." *Millhollan v. State*, 221 Ga. 165, 143 S.E.2d 730, 733 (1965); *Anderson v. State, Alaska*, 562 P.2d 351 (1977).
> " * * * Although the language of the statute is broad and the prohibited behavior is very general, this seems *necessary* in the nature of its subject matter. * * * " (Emphasis not supplied.) *People v. Beaugez*, 232 Cal.App.2d 650, 43 Cal.Rptr. 28, 33 (1965).

*Sorenson*, 604 P.2d at 1035. Laudable sentiments, but the "beneficent purpose" of a statute does not excuse a lack of due process. Neither does it make "necessary" broad language and a general statement of prohibited behavior. I would find the statute unconstitutional.